RECEIVED

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

| | |
|---|---|
| DARRELL GRAYSON,                              * | |
|          *  | |
|     Plaintiff,                     * | |
|          * | |
| v.                                            * | |
|          * | |
| RICHARD ALLEN, Commissioner,                  * | |
| Alabama Department of Corrections,            * | |
|          * | |
| GRANTT CULLIVER, Warden,                      *  | Case No. 2:06cv1032-MEF |
| Holman Correctional Facility, and             * | |
|          * | |
| OTHER UNKNOWN EMPLOYEES                        * | |
| AND AGENTS,                                    * | |
| Alabama Department of Corrections,            * | |
|          * | |
| Individually, and in their                    * | |
| official capacities.                          * | |
|          * | |
|     Defendants.                    * | |

## COMPLAINT

1.      Plaintiff Darrell Grayson is a condemned Alabama prisoner who brings

this action seeking declaratory and injunctive relief to prevent the Defendants from

using Alabama's current lethal injection procedures to execute him. The Defendants'

improper use of anesthesia as a precursor to execution unnecessarily risks infliction

of pain and suffering. In addition, because the chemicals used for execution require

the proper induction and maintenance of anesthesia, the Defendants' failure to use medically approved procedures and properly trained personnel creates an unacceptable risk that Mr. Grayson will suffer excruciating pain during the course of his execution. Mr. Grayson brings this action pursuant to 42 U.S.C. § 1983 and the United States Constitution for threatened violations of his rights to be free from cruel and unusual punishment under the Eighth and Fourteenth Amendments to the United States Constitution.

## JURISDICTION

2.    Jurisdiction of this matter arises under 42 U.S.C. § 1983, 28 U.S.C. § 1331, 28 U.S.C. § 1343, 28 U.S.C. § 2201, and 28 U.S.C. § 2202.

## VENUE

3.    Venue is appropriate in the Middle District of Alabama under 28 U.S.C. § 1391(b) and 1393.

## THE PARTIES

4.    Plaintiff Darrell Grayson is a United States citizen and a resident of the State of Alabama.  Mr. Grayson is a death-sentenced prisoner currently being held in the custody of the Defendants at Holman State Prison. His petitions to the state and federal courts for post-conviction relief were denied.

5.    Defendant Richard Allen is the Commissioner of the Alabama Department of Corrections (ADOC). Defendant Grantt Culliver is the Warden of the Holman Correctional Facility in Atmore, Alabama. Other Unknown Employees and Agents of the Alabama Department of Corrections are involved in the development and execution of lethal injections; Plaintiff does not yet know the identity of these persons. All of the Defendants are being sued in their individual and official capacities. The named Defendants are citizens and residents of the State of Alabama.

## GENERAL ALLEGATIONS

6.    Mr. Grayson was convicted of capital murder in Shelby County, Alabama, on June 3, 1982. He was given his instant sentence of death on June 25, 1982.

7.    Under Alabama law, the Alabama Department of Corrections is responsible for carrying out executions, all of which take place at the Holman Correctional Facility. Ala. Code § 15-18-82, 82.1. Alabama law does not prescribe specific drugs, dosages, drug combinations, sequences, or manner of administering lethal chemicals to carry out executions; nor does it prescribe any certification, training, or licensure required of those who participate in either the anesthesia process or the execution.

8.     Richard Allen, the Commissioner of the Alabama Department of Corrections, has not responded to requests for written protocols, if any exist, and other information about all procedures involved in carrying out executions in Alabama.

9.     Plaintiff asserts upon information and belief that Alabama uses drugs to achieve first anesthesia, then paralysis, and finally execution by cardiac arrest. The chemicals used include Thiopental, Pavulon, and potassium chloride. These drugs are used for this purpose in other states. See Morales v. Hickman, 415 F. Supp. 2d 1037, 1039 (N.D. Cal. 2006) (California); Taylor v. Crawford, et al., No. 05-4173-CV-C-FJG, 2006 WL 1779035, *8-9 (W.D. Mo. June 26, 2006) (Missouri). This combination will likely subject Mr. Grayson to an excruciatingly painful and torturous death.

10.     The first drug, Thiopental (also known as sodium pentothal), is an ultra-short acting barbiturate which acts to depress the central nervous system to produce unconsciousness and anesthesia. Thiopental derives its utility from its rapid onset and rapid redistribution through the body at surgical doses. Typically, Thiopental is used in the induction phase of anesthesia to temporarily anesthetize patients for sufficient time to, for example, intubate the trachea.

11.    If it is necessary to maintain a patient in a surgical plane of anesthesia for longer than just a few minutes, physicians typically use drugs other than Thiopental. If Thiopental is used not only to induce, but also to maintain a surgical plane of anesthesia, a qualified person must be present to continually monitor the patient to ensure that the Thiopental has been correctly administered and is maintaining the patient in a state of unconsciousness.

12.    Next, Defendants administer pancuronium bromide, also referred to as Pavulon, which paralyzes voluntary muscles, including the diaphragm. Pavulon does not affect consciousness or the perception of pain. To the extent that the first chemical, Thiopental, is improperly administered and fails to establish and maintain a sufficient plane of anesthesia, the Pavulon serves only to mask the pain and suffering that would attend a paralyzed diaphragm. Pavulon masks the tell-tale physical signs that would signal a properly trained observer whether or not a prisoner had been sufficiently anesthetized.

13.    Finally, the drug that is used to fatally poison the prisoner is potassium chloride. Potassium chloride disrupts the normal electrical activity of the heart and stops it from pumping blood, thereby causing cardiac arrest. As it travels in the bloodstream from the site of injection toward the heart, potassium chloride activates

all the nerve fibers inside the vein, causing a burning sensation as it courses through the body and ravages the internal organs.

14.    This causes excruciating pain that is agonizing for a recipient who has not been properly anesthetized.  Because of this risk of excruciating pain, the use of potassium chloride requires an appropriate anesthesia protocol prior to its administration to ensure an adequate depth of anesthetic plane.  However, anesthetic depth cannot be reliably determined during Alabama executions because of the use of the Pavulon, which blocks an accurate assessment by paralyzing all of the muscles that would otherwise move when in excruciating pain.  Because no one can reliably assess anesthetic depth using this process (and make appropriate adjustments), the procedures the Defendants' use can result in the extreme terror and suffering of conscious suffocation.

15.    The American Veterinary Medical Association (AVMA) states that the use of neuromuscular paralyzing drugs, including pancuronium bromide (Pavulon), solely or in conjunction with other drugs, is unacceptable as a method of euthanasia. The American Veterinary Medical Association further states that the use of potassium chloride in a euthanasia protocol requires a surgical plane of anesthesia, which is characterized by loss of consciousness, loss of reflex muscle response, and loss of response to noxious stimuli.    The American Veterinary Medical Association

recommends the use of a longer lasting barbiturate for animal euthanasia than the Thiopental that is used in Alabama executions of death-sentenced prisoners.

16.    Defendants do not conduct lethal injections that comport with the appropriate standards of practice for inducing and monitoring anesthesia as a precursor to execution. Nor do Defendants take effective measures to ensure that a prisoner will not suffer a conscious and painful death under the current anesthesia procedures.

17.    Defendants' anesthesia procedures lack medically necessary safeguards and therefore substantially increase the risk that an inmate such as Mr. Grayson will suffer unnecessary pain during the course of his execution. There is no standardized time to administer each of the three chemicals. There are no procedures for ensuring that the anesthetic agent is properly flowing into the prisoner and no procedures for ensuring that the prisoner is properly sedated prior to the administration of other chemicals, as would be required in any medical or veterinary procedure before the administration of a neuromuscular blocking agent (such as pancuronium bromide) or the administration of a painful potassium chloride overdose.

18.    Defendants' existing procedures do not require any minimum qualifications or expertise required of the personnel who perform the tasks in the anesthesia and execution processes. Defendants do not adequately ensure that the

individuals responsible for inducing and maintaining unconsciousness are credentialed, licensed, and proficient in the knowledge, skills, and procedures necessary to establish an appropriate plane of anesthesia throughout the lethal injection process, notwithstanding the fact that it is a complex medical procedure requiring expertise to be performed correctly.

19.    The absence of medical personnel credentialed, licensed, and proficient in the field of anesthesiology and the lack of adequate procedures greatly increases the risk that a prisoner will not receive the necessary amount of anesthetic prior to being paralyzed by the pancuronium bromide and then experiencing the painful internal burn of the potassium chloride, and greatly increases the risk that a conscious prisoner will experience excruciating pain and suffering.

20.    The lack of adequate standards for administration of chemicals, the lack of qualifications of the personnel involved in the process, and the combination of the drugs the Defendants use as a precursor to an execution as well as for the execution creates a grave and substantial risk that Mr. Grayson will be conscious throughout the execution process and, as a result, will experience an excruciatingly painful and protracted death.

21.    The risk of such a painful and protracted death has been recognized by at least two United States District Courts. A Missouri District Court, after allowing

discovery and conducting evidentiary hearings, found that the lethal injection procedure there "subjects condemned inmates to an unnecessary risk that they will be subject to unconstitutional pain and suffering when the lethal injection drugs are adminstered[,]" and stayed all executions until the Missouri Department of Corrections prepared a written procedure for death by lethal injection that incorporated each of the provisions enumerated by the Court in its order. Taylor v. Crawford, et al., No. 05-4173-CV-C-FJG, 2006 WL 1779035, *8-9 (W.D. Mo. June 26, 2006). A California District Court issued an order prohibiting a scheduled execution to proceed unless the state Department of Corrections altered its procedures for bringing about death by lethal injection to comply with one of two alternatives required by the Court. Morales v. Hickman, 415 F. Supp. 2d 1037, 1047-1048 (N.D. Cal. 2006).

## CAUSE OF ACTION

**THE DEPARTMENT OF CORRECTIONS'S FAILURE
TO MINIMIZE THE RISK OF UNNECESSARY PAIN,
SUFFERING AND MUTILATION IN THE ADMINISTRATION OF
THE LETHAL INJECTION VIOLATES THE EIGHTH AMENDMENT'S
PROSCRIPTION AGAINST CRUEL AND UNUSUAL PUNISHMENT.**

22.    Mr. Grayson incorporates the preceding paragraphs by reference.

23.    The Defendants are acting under color of Alabama law in undertaking to execute Plaintiff Darrell Grayson by lethal injection.

24.    Defendants have acted with deliberate indifference in failing to select additional or alternative chemicals and to retain qualified medical personnel to administer its chosen chemicals to ensure the constitutionality of its lethal injection procedure.

25.    The use of an insufficient, improperly designed and improperly administered procedure for inducing and maintaining anesthesia prior to execution, the use of chemicals that cause severe pain in the process of causing death, and the failure of the Alabama Department of Corrections to take sufficient measures to minimize the risk of unnecessary, extreme and excruciating pain and mutilation, when that risk could be minimized, thereby resulting in Mr. Grayson unnecessarily suffering an excruciating death, violates his right to be free from cruel and unusual punishment under the Eighth and Fourteenth Amendments to the United States Constitution.

## PRAYER FOR RELIEF

For the foregoing reasons, Plaintiff Darrell Grayson respectfully requests this Court to:

A.    Grant injunctive relief to enjoin Defendants from executing Plaintiff with inadequate anesthesia and execution procedures that violate the Eighth Amendment prohibition against cruel and unusual punishments;

B.    Enter a declaratory judgment that Defendants' inadequate anesthesia and

execution procedures violate the Eighth Amendment prohibition against

cruel and unusual punishments;

C.    Grant reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 and the

laws of the United States, as well as costs of suit; and

D.    Grant any further relief as it deems just and proper.

Respectfully submitted,

RICHARD S. JAFFE
Alabama Bar No. ASB4644F68R
Jaffe, Strickland & Drennan, P.C.
2320 Arlington Avenue
Birmingham, AL 35205
T: 205/ 930-9800
F: 205/ 930-9809
richard@rjaffelaw.com

STEPHEN B. BRIGHT
GA Bar No. 082075
83 Poplar Street, N.W.
Atlanta, GA 30303
T: 404/ 688-1202
F: 404/ 688-9440
sbright@schr.org

*Attorneys for Plaintiff*
*Darrell Grayson*

By _____

## CERTIFICATE OF SERVICE

I certify that on November ⎽⎽ 2006, I served two copies of this complaint by

first-class mail to:

       Clay Crenshaw
       Office of the Attorney General
       Alabama State House
       11 South Union Street
       Montgomery, Alabama 36130

       Richard Allen
       Commissioner
       Alabama Department of Corrections
       301 S. Ripley St.
       P.O. Box 301501
       Montgomery, AL  36130-1501

       Grantt Culliver
       Warden
       Holman Prison
       Holman 3700
       Atmore, AL  36503-3700

