IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| DARRELL GRAYSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. 2:06-CV-01032-WKW |
| | ) |
| RICHARD ALLEN, Commissioner, | ) |
| And GRANTT CULLIVER, Warden, | ) |
| | ) |
| Defendants. | ) |

**NOTICE OF FILING OF ADDITIONAL MATERIAL
IN SUPPORT OF DEFENDANTS' OBJECTION TO TRIAL SETTING
AND EXPEDITED DISCOVERY SCHEDULE**

Defendants, Richard Allen, in his official capacity as Commissioner of the Alabama Department of Corrections, and Grantt Culliver, in his official capacity as Warden of the Holman Correctional Facility ("Defendants"), give notice of filing the April 27, 2007 opinion of the United States Court of Appeals for the Eleventh Circuit in Jones v. Allen, affirming the decision of the district court denying a motion for stay of execution. The motion to stay was filed in a lethal-injection action virtually identical to this one. A copy of the opinion is attached.

Defendants specifically draw the Court's attention to the lengthy footnote 2 on pages 8 and 9 of the opinion. The Eleventh Circuit expressly "agree[d]" with the district court's finding that "adjudicating Jones' claim in the trial court would take 'much more than three months' and that a subsequent appeal 'would add months, if not years, to this litigation.'" Slip Op. at 9, n.2.

1

Accordingly, the Eleventh Circuit found that Jones's suit was not "filed in time to allow full adjudication without the need for a stay of execution." Id.

This decision from the Eleventh Circuit supports Defendants' argument that Grayson's case, like Jones's case, cannot be litigated to conclusion (i.e., including all appeals) before his execution date. Jones's execution was set approximately 60 days in advance; Grayson's was set 90 days in advance. Because a trial and appeal will take many more months than that, the extra thirty days does not change the fact that Grayson filed too late in the day. Defendants continue to believe (and the attached Eleventh Circuit opinion strongly supports their belief) that the Court should not order an expedited schedule or set this case for trial before the execution date, but instead should first address the pending dispositive motions and the upcoming motion for stay of execution.

Respectfully submitted,

**TROY KING (KIN047)**
**ATTORNEY GENERAL**
**BY:**

_____
J. Clayton Crenshaw (CRE007)
James W. Davis (DAV103)
Assistant Attorney General

OF COUNSEL:

Office of the Attorney General
11 South Union Street
Montgomery, AL 36130
(334) 242-7300
(334) 353-8440 Fax
Email: jimdavis@ago.state.al.us

2

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has this 27th day of April, 2007, been furnished by United States Mail to the following:

| | |
|---|---|
| Richard S. Jaffe | Stephen B. Bright |
| Jaffe, Strickland & Drennan, P.C. | 83 Poplar Street, N.W. |
| 2320 Arlington Avenue | Atlanta, GA  30303 |
| Birmingham, AL  35205 | sbright@schr.org |
| Richard@rjaffelaw.com | |

_____
OF COUNSEL

[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APR 27 2007
THOMAS K. KAHN
CLERK

No. 07-11840-P

D.C. Docket No. 2:06-cv-986-MHT-TFM

AARON LEE JONES,

                                Plaintiff-Appellant,

versus

RICHARD ALLEN, Commissioner,
Alabama Department of Corrections,
individually and in his official capacity,
GRANTT CULLIVER, Warden, Holman
Correctional Facility in his individual and
official capacity,

                                Defendants-Appellees.

Appeal from the United States District Court
for the Middle District of Alabama

Before ANDERSON, BIRCH, and DUBINA, Circuit Judges.

DUBINA, Circuit Judge:

Plaintiff Aaron Lee Jones ("Jones") is an Alabama death row inmate scheduled for execution on May 3, 2007. On November 1, 2006, Jones filed a complaint under 42 U.S.C. § 1983 challenging the three-drug protocol Alabama will use to carry out his execution by lethal injection. After receiving notice that the Alabama Supreme Court set an execution date of May 3, 2007, Jones filed a motion to stay his execution. The district court denied Jones's motion to stay and denied in part and granted in part Jones's motion to alter or amend the judgment. Jones appealed the district court's judgment and filed in this court a motion to stay his execution. After reviewing the record and reading the parties' briefs, we affirm the district court's judgment and deny Jones's motion to stay his execution.

## I. BACKGROUND

The details of Jones's crimes are set forth in our opinion affirming the district court's judgment denying Jones federal habeas relief. *See Jones v. Campbell*, 436 F.3d 1285 (11th Cir.), *cert. denied, Jones v. Allen*, 127 S. Ct. 619 (2006). Briefly, in November 1978, Jones and a co-defendant brutally murdered a grandmother, mother, and father, and severely wounded three children, all in the same family. Two of the wounded children who witnessed the horror of these crimes testified at Jones's trial.

After a jury found Jones guilty of capital murder under Ala. Code § 13-11-2(a)(10) (1979) (repealed 1981), the jury recommended a death sentence. The trial court agreed with the jury's recommendation and imposed a death sentence. On appeal, the Alabama Court of Criminal Appeals reversed the conviction and ordered a new trial pursuant to *Beck v. Alabama*, 447 U.S. 625, 100 S. Ct. 2382 (1980), and *Ritter v. State*, 403 So. 2d 154 (Ala. 1981). Following a retrial, the jury again found Jones guilty and recommended that he be sentenced to death. The trial court followed the jury's recommendation and sentenced Jones to death. On appeal, the Alabama Court of Criminal Appeals remanded the case to the trial court to allow the trial court to clarify its sentencing order regarding the mitigating and aggravating circumstances. Following this limited remand, the state appellate court affirmed Jones's conviction and death sentence. *See Jones v. State*, 520 So. 2d 543 (Ala. Crim. App. 1984). The Alabama Supreme Court affirmed, *Ex parte Jones*, 520 So. 2d 553 (Ala. 1988), and the United States Supreme Court denied *certiorari* review. *Jones v. Alabama*, 488 U.S. 871, 109 S. Ct. 182 (1988).

In March 1990, Jones filed a post-conviction petition pursuant to Rule 32, Ala. R. Crim. P., challenging his conviction and sentence. The trial court denied Jones post-conviction relief, and the Alabama Court of Criminal Appeals affirmed the trial court's order. *See Jones v. State*, 753 So. 2d 1174 (Ala. Crim. App.

3

1999). Jones then filed a federal habeas petition raising numerous claims for relief, including a method-of-execution claim that challenged Alabama's use of electrocution. In July 2002, while Jones's federal habeas petition was pending, the Alabama Legislature changed the State's method of execution from electrocution to lethal injection. The statute gave death-row inmates 30 days to elect electrocution instead. After that period of time, the State's sole method of execution would be lethal injection. *See* Ala. Code § 15-18-82.1 (2006 Cumulative Supp.).

In 2004, the district court denied Jones relief, but granted his motion for a Certificate of Appealability ("COA") on four claims of ineffective assistance of counsel. On appeal, we denied Jones relief on the claims presented in the COA. *See Jones*, 436 F.3d at 1305.

On November 1, 2006, Jones filed a § 1983 complaint challenging the State's lethal injection method and procedure. Jones filed a motion to stay his execution on March 14, 2007, after receiving notice on or about February 27, 2007, that the Alabama Supreme Court had set an execution date of May 3, 2007. On April 17, 2007, the district court denied Jones's motion to stay, finding that the

equities weighed in favor of denying a stay.[1] Two days later, Jones filed a motion to alter or amend the judgment, which the district court denied in part and granted in part. The district court granted the motion in order to clarify the appealability of its judgment. On April 24, Jones appealed the district court's judgment and filed a motion to stay his execution.

## II. DISCUSSION

As the Supreme Court reiterated in *Hill v. McDonough*, 126 S. Ct. 2096, 2104 (2006), "a stay of execution is an equitable remedy." A stay "is not available as a matter of right, and equity must be sensitive to the State's strong interest in enforcing its criminal judgments without undue interference from the federal courts." *Id.* Thus, a petitioner's complaint under § 1983 does not entitle him to an order staying his execution as a matter of course. "Both the State and the victims of crime have an important interest in the timely enforcement of a sentence." *Id.* (citing *Calderon v. Thompson*, 523 U.S. 538, 556, 118 S. Ct. 1489, 1501 (1998)). When considering a motion to stay an execution, we must apply "a strong equitable presumption against the grant of a stay where a claim could have been brought at such a time as to allow consideration of the merits without requiring

---

[1] The district court also denied a motion for summary judgment filed by the defendants based on Statute of Limitations grounds. Because the defendants have not filed a cross-appeal as to that ruling, we expressly decline to consider it.

entry of a stay," given the State's significant interest in the enforcement of its criminal judgments. *Nelson v. Campbell*, 541 U.S. 637, 650, 124 S. Ct. 2117, 2126 (2004).

Jones requests that this court reverse the district court's stay order and grant him a stay of execution pending the outcome of his § 1983 challenge to the State's method of execution. Jones argues forcefully in his brief that the district court clearly erred in finding that he acted in a dilatory manner in filing his challenge to Alabama's three-drug lethal injection protocol and claims that he shows a likelihood of success on the merits. He contends that he did not wait until the eve of his execution, *see Hill v. McDonough* ("*Hill II*"), 464 F.3d 1256, 1259-60 (11th Cir.), *cert. denied*, 127 S. Ct. 465 (2006); *Rutherford v. McDonough*, 466 F.3d 970, 973-74 (11th Cir.), *cert. denied*, 127 S. Ct. 465 (2006), but rather filed this case before the United States Supreme Court denied *certiorari* review on his federal habeas petition and before the Alabama Supreme Court set his execution date. Jones claims that he commenced his action when his execution became imminent, and since then he has diligently pursued discovery from the State. He also takes issue with the district court's finding of dilatoriness by in essence blaming the State, and to some extent the district court, for any dilatory conduct.

The State responds that because Jones was dilatory in bringing his challenge to the State's three-drug lethal injection protocol, he is not entitled to a stay of execution. First, the State asserts that Jones was aware of the existence of a method-of-execution challenge when he filed his federal habeas petition. Second, the State argues that Jones knew either on the date that Alabama changed its method of execution to lethal injection, July 1, 2002, or on the date when Jones did not affirmatively elect electrocution as his method of execution, July 31, 2002, that lethal injection was the method the State would use to execute him. Furthermore, between July 2002 and September 30, 2004, Alabama executed six inmates by lethal injection. Yet, Jones waited an additional two years before filing his complaint. Finally, the State claims that these types of challenges have been brought throughout the United States over the past several years, a point Jones makes repeatedly in his filings. Therefore, the State urges this court to affirm the district court's stay order and to deny Jones's motion to stay his execution because Jones filed his challenge "too late in the day." *See Hill*, 126 S. Ct. at 2104.

In a thorough and well-reasoned opinion, the district court found that Jones was dilatory in bringing his § 1983 action and accordingly found that the equities did not weigh in favor of granting a stay. The district court did not abuse its discretion in denying Jones's motion for a stay of execution. *See Delo v. Blair*,

509 U.S. 823, 823, 113 S. Ct. 2922, 2923 (1993); *see also Hauser ex rel. Crawford v. Moore*, 223 F.3d 1316, 1321 (11th Cir. 2000). As the district court noted, Jones filed the instant action nearly four years after Alabama made lethal injection its primary method of execution. Moreover, in his federal habeas petition filed in 2000, Jones raised a similar claim challenging electrocution as Alabama's method of execution. When the Alabama Legislature changed the method of execution to lethal injection, Jones could have then amended his habeas petition to challenge lethal injection as well.[2] By waiting until November 2006 to

---

[2] Despite the fact that Jones filed this suit nearly ten months after we denied his habeas petition in January 2006, he argues that he "naturally believed" his Eighth Amendment claim could be fully adjudicated "*and an appeal determined* without need for a stay of execution" because no execution date had been set when he filed his complaint. We think that this was an unreasonable assumption. We agree with the district court's finding of fact that one of the most naturally foreseeable risks facing an inmate who waits to file his method-of-execution challenge until many months after his federal habeas petition has been denied on appeal is that an execution date will be set during the pendency of the proceedings, thus necessitating the entry of a stay if full adjudication and an appeal are to be had. This risk is particularly foreseeable in Alabama, where the Alabama Supreme Court is authorized to enter an order fixing an inmate's date of execution "at the appropriate time." Ala. R. App. P. 8(d) ("The supreme court *shall at the appropriate time* enter an order fixing a date of execution." (emphasis added)). It is common practice in Alabama for the State to seek an execution date soon after the Supreme Court denies *certiorari* review of an inmate's federal habeas petition. As a matter of common sense, completion of collateral review eliminates the last possible obstacle to execution, and Jones should have foreseen that the execution date would likely be set promptly upon completion of collateral review. Although Jones suggests that the State acted inappropriately in seeking an execution date in this case, we note that the district court expressly found as a fact that "there is no evidence in this case that the State sought and obtained an execution date for Jones in bad faith." *Jones v. Allen*, No. 2:06-cv-00986-MHT-TFM, slip. op. at 37 (M.D. Ala. April 17, 2007).

Waiting to file suit until the Supreme Court has denied *certiorari* review of an

file his lethal injection challenge, Jones faced the possibility that the Alabama Supreme Court would set his execution date during the pendency of his lethal injection challenge.

We see no convincing reason why, after Alabama made lethal injection its primary method of execution, Jones could not have brought his method-of-execution challenge sooner than he did. Jones knew of the State's intention to execute him at least by July 2002. "It was during that period – in which the

---

inmate's federal habeas petition, or, as Jones did, waiting until a petition for *certiorari* has been pending for over three months, is simply too late to avoid the inevitable need for a stay of execution. *See Harris v. Johnson*, 376 F.3d 414, 417 (5th Cir. 2004) ("The brief window of time between the denial of certiorari and the state's chosen execution date . . . is an insufficient period in which to serve a complaint, conduct discovery, depose experts, and litigate the issue on the merits."). The district court made a factual finding that adjudicating Jones's claim in the trial court would take "much more than three months" and that a subsequent appeal "would add months, if not years, to this litigation." *Jones*, slip op. at 37. We agree and thus cannot say that Jones's suit was filed in time to allow full adjudication without the need for a stay of execution.

Jones says that he did not pursue his method-of-execution claim any earlier than November 2006 because it was not ripe for consideration before that time. Jones argues that ripeness occurred only when there was a "strong possibility" that he "actually faced execution" by lethal injection. We need not determine with specificity when Jones's claim became ripe. *But see Gomez v. U.S. Dist. Ct. for N.D. Cal.*, 503 U.S. 653, 654, 112 S. Ct. 1652, 1653 (1992) ("This claim [a challenge to lethal injection] could have been brought more than a decade ago."). However, we can say in any event that, even under Jones's definition of ripeness, there was far more than a "strong possibility" that Jones would be put to death by lethal injection by January 2006 (when we denied relief on Jones's habeas petition). *See Harris*, 376 F.3d at 418 (requiring method-of-execution claim to be pursued even when death by lethal injection is merely "an event *reasonably likely* to occur in the future"). Indeed, by January 2006, given the extremely small chance of securing *certiorari* review in the Supreme Court, it was all but guaranteed that Jones would die by lethal injection. Yet Jones has offered no reason at all for his decision to wait nearly ten additional months to file this suit.

execution was not so much an imminent or impending danger as it was an event reasonably likely to occur in the future – that [Jones] needed to file this challenge." *Harris*, 376 F.3d at 418. By waiting until November 2006 to file his challenge to the State's lethal injection protocol, Jones "leaves little doubt that the real purpose behind his claim is to seek a delay of his execution, not merely to effect an alteration of the manner in which it is carried out." *Id.*[3]

---

[3] Although it does not explicitly say so, Jones's brief might be read to suggest that he was impeded in filing this suit earlier by the fact that the State's lethal injection protocol is confidential and that specific information about it was learned only through discovery. To the extent that he makes this argument, we reject it. The crux of Jones's challenge to the lethal injection protocol – despite other general allegations about the training of the prison staff, etc. – is that the first of the three drugs (sodium thiopental) will be administered in such a way that it will not induce a sufficiently deep plane of anesthesia and that, as a result, he will be conscious but physically paralyzed (because of the second drug, a paralytic agent known as pancuronium bromide) when the third, excruciatingly painful and death-inducing drug (potassium chloride) is administered. Regardless of the confidentiality of the State's protocol, Jones cannot assert that he was unaware of the fact that the State (like almost every other state that carries out executions using lethal injection) employs this three-drug cocktail. Any such assertion is belied by his complaint, which alleges "upon information and belief" that the State uses "Thiopental, Pavulon, and Potassium Chloride . . . to achieve first anesthesia, then paralysis, and finally . . . cardiac arrest." Compl. ¶ 16. Thus, Jones knew of the basis of his claim before he filed his complaint. Moreover, the expert upon whom Jones relies in pursuing this challenge has been opining on the alleged risks associated with this particular three-drug cocktail since at least 2003. The fact that Jones knew or should have known before 2006 that the State uses the same three-drug cocktail as nearly every other state where substantially similar challenges have been made, coupled with the fact that the alleged risks associated with the cocktail were known three years before Jones filed his complaint, compels us to reject any argument Jones has made that his attempts to pursue this challenge earlier were impeded by the secrecy of the protocol. Moreover, the district court found as a fact that Jones either was or should have been aware of the risks involved and the potential challenge to the lethal injection procedure well before he filed suit. *See Jones*, slip op. at 38-39 (citing numerous cases mounting challenges similar to Jones's dating back to the year 2000). Jones has wholly failed to demonstrate that this finding of fact is clearly erroneous.

10

We are mindful that the proper query in this case is whether Jones could have brought his claim "at such a time as to allow consideration of the merits without requiring entry of a stay." *Nelson*, 541 U.S. at 650, 124 S. Ct. at 2126; *see also Patton v. Jones*, 193 Fed. Appx. 785, 788-89 (10th Cir. Aug. 25, 2006) (denying requested stay of execution in § 1983 lethal injection challenge, emphasizing there was no legal impediment to filing the § 1983 action while the collateral appeals were ongoing). In answering this question, we must be "sensitive to the State's strong interest in enforcing its criminal judgments without undue interference from the federal courts." *Hill*, 126 S. Ct. at 2104 (citing *Nelson*, 541 U.S. at 649-50, 124 S. Ct. at 2126). Not only the State, but also the Nelson children, who watched Jones and his co-defendant kill their parents and grandmother and who themselves were stabbed and shot, have a strong interest in seeing Jones's punishment exacted. If this court were to grant the motion to stay to allow Jones to proceed on his § 1983 challenge in district court, the implementation of the State's judgment would be delayed many months, if not years. Jones, in essence, would receive a reprieve from his judgment. *See Thompson v. Wainwright*, 714 F.2d 1495, 1506 (11th Cir. 1983) (observing that "[e]ach delay, for its span, is a commutation of a death sentence to one of imprisonment"). The State and the surviving victims have waited long enough for

some closure to these heinous crimes. We will not interfere with the State's strong interest in enforcing its judgment in this case.

Accordingly, we affirm the district court's judgment denying Jones's motion to stay his execution, and we deny Jones's motion to stay filed with us.

**AFFIRMED; STAY OF EXECUTION DENIED.**[4]

---

[4] Jones's reply brief advises that another district judge in Alabama has indicated the possibility of a trial on the lethal injection issue for June 26, 2007. Jones argues that we should grant him a stay for this reason. We cannot agree. Jones would have been entitled to a trial on the merits had he brought his suit in time to allow consideration of the merits without requiring entry of a stay, but he did not. Thus, the strong presumption against a stay operates against Jones. The mere setting of a trial date in another case does not increase whatever preexisting risk there was that a mistake will be made in his imminent execution (and cause pain that rises to the level of cruel and unusual punishment). In fact, the equitable considerations in each case are naturally different. Thus, the mere possibility of a trial date in another case does not affect the balancing of the equities in this case.