IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| **DARRELL GRAYSON,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. 2:06-CV-01032-WKW |
| | ) |
| **RICHARD ALLEN, Commissioner, et al.,** | ) |
| | ) |
| Defendants. | ) |

**BRIEF IN SUPPORT OF (1) DEFENDANTS' OBJECTION TO
PART OF MAGISTRATE JUDGE'S ORDER AND (2) MOTION
TO STRIKE "PLAINTIFF'S MOTION TO CORRECT RECORD"**

Defendants respectfully submit this brief in support of their objections to the Magistrate Judge's Order entered on May 11, 2007.[1] Defendants filed an objection (doc. no. 65) to the order to the extent it requires the deposition of the RN, to the extent it requires face-to-face depositions of persons who assist or have assisted with the execution process, and to the extent it requires the Defendants to request and receive licensing information from third-party agencies in a matter of days. Defendants also filed a motion to strike the affidavit of William Montross, one of the attorneys for Grayson, on grounds that it contains hearsay testimony concerning what attorneys for other inmates have said to Mr. Montross.

I. **GRAYSON HAS LITTLE NEED FOR THE REQUESTED DISCOVERY, AND NO NEED FOR THE PARTICULAR METHOD OF DISCOVERY REQUETED.**

The primary issue of the Magistrate Judge's order is whether certain depositions should be taken by telephone or in person. A comparison of Grayson's so-called need for this particular

---

[1] In an effort to comply with this Court's orders, Defendants filed a tentative objection the morning of Monday, May 14, although counsel were still conferring with their clients. The undersigned counsel can now represent that Defendants stand by the objection filed this morning and have no further amendments except for the arguments presented in this supporting brief.

CONFIDENTIAL

method of discovery with Defendant's need to protect the anonymity of witness demonstrates that Defendants are entitled to an order restricting the manner of depositions.

First of all, a desire by the court to reach the merits of the issue to resolve the question of whether Alabama's procedures are constitutional do not weigh in favor of allowing plaintiff to take this discovery, and certainly not to take it by any particular method. Defendants understand all too well how the parties and the Court feel like we are all in the movie <u>Groundhog Day</u>, reliving the lawsuit (and the motion to stay and the appeal and the cert. petition . . . ) over and over again. But a ruling on the merits in Grayson's case, however it comes out, will not end the strategy of death row inmates seeking to delay their execution by filing a § 1983 case. The future plaintiffs will claim their case is different, or seize on a new claim altogether to assert under § 1983. The way to get out of the "<u>Groundhog Day</u>" cycle is not to expedite the schedule and allow Grayson to conduct the discovery in the manner he requests. Instead, the solution is a rule, under either laches or the statute of limitations, which will require these claims to be brought at a much earlier date. Therefore, the burden that this case and others like it places on the judicial system does not weigh in favor of allowing Grayson to have discovery or to conduct discovery by any particular method.

In fact, Grayson is not entitled to any discovery. Not only did he wait too late to bring his claims, but the entirety of his case is brought on the flawed premise that his expert should get to decide the standard of care required by the Eighth Amendment, and his claim fails regardless of the witness testimony. (<u>See</u> Defendant's Motion to Strike Heath Declaration, filed separately). Moreover, no matter what the EMT and DOC witnesses say in their deposition, Grayson will still argue that the State's procedures are unconstitutional, because in his view only anesthesiologists, nurse anesthetists and the like can perform certain duties. (<u>Id</u>). Therefore,

under his flawed theory of the case the witnesses that are the subject of this motion do not matter. Certainly, then, Grayson has no great need for his counsel to know what the execution team members look like. <u>To the extent</u> Grayson is allowed to conduct discovery, any perceived need of his for "live" depositions must be balanced with Defendants' recognized interests.

Grayson can conduct a thorough deposition by telephone and has no need for "face-to-face" depositions. Grayson's suggestion that the witnesses will not be fully truthful if speaking on the telephone has no basis in fact. Grayson's suggestion that the witnesses will be "coached" if Grayson's counsel are not present is also unsupported, not to mention offensive. Counsel for the Defendants have given no cause for Grayson to assert that they will not behave appropriately in a deposition, regardless of how it is conducted. The information at issue is whether these witnesses are qualified and what they may have observed during past executions, and a witness' appearance has nothing to do with his or her qualifications. Grayson simply has no need to know what the deponents look like. Therefore, when weighing the respective interests of the parties, Grayson's needs should be viewed as minimal or non-existent.

**II.     THE STATE HAS A STRONG INTEREST IN PROTECTING THE SAFETY, PRIVACY, AND ANONYMITY OF EXECUTION-TEAM WITNESSES.**

The Defendants, on the other hand, have a strong interest in measures that will protect the anonymity of persons who assist in the execution process. Numerous other courts have recognized this interest, as demonstrated by the following quotations:

> Defendants' fear that members of the execution team and their families could be subject to retaliation if their identities became known to a wider circle of people, including the prison's inmates, certainly is a "legitimate governmental interest."

<u>Thompson v. Department of Corrections</u>, 18 P.3d 1198, 1207 (Cal. 2001) (upholding prison regulations concerning access to spiritual advisor).

> The identity of the execution team is kept confidential for the security of the institution and for the safety of the staff members and their families. Members of the execution team and their families may be subject to retaliation and harassment if their identities became known throughout the institution and the public at large.

Workman v. Campbell, 2002 WL 869963 (Tenn.App. May 7, 2002) (unreported decision) (upholding prison regulation concerning access to personal spiritual advisor).

> [T]he Defendants have a strong interest in preserving the safety, and hence anonymity, of the execution team members and those involved with the process. . . . The Defendants are therefore entitled to scrupulously protect those interests, both during discovery and at any trial, in a manner that they deem most appropriate, to the extent that manner does not unduly interfere with [the plaintiff's] need to obtain discovery of relevant information.

Moore v. Rees, ___ F.Supp.2d ___, 2007 WL 1035013 (E.D.Ky. March 30, 2007)(encouraging counsel to come to an agreement concerning the requested depositions). See also, Morales v. Tilton, 2006 WL 3953137 (slip copy) (N.D. Cal. Sept. 14, 2006) (approving redaction of identifying information from documents released to the press) ("the Court has recognized that Defendants have a valid traditional and historical interest in maintaining the anonymity of members of the execution team.").

### III. OTHER COURTS HAVE ORDERED THAT DISCOVERY IN SIMILAR CASES BE STRUCTURED TO PROTECT THE WITNESSES' IDENTITY.

In light of this interest, courts hearing claims similar to those raised by Grayson have allowed depositions of execution team members, but have appropriately limited the context and mechanics of discovery (and trial testimony) to protect their identity. For example, in Taylor v. Crawford, 2006 WL 1779035 (W.D.Mo. June 26, 2006) (slip copy), the district judge noted that he "allowed plaintiff to conduct a <u>limited anonymous</u> deposition of John Doe 1." In Lenz v. Johnson, 443 F.Supp.2d 785, 788 (E.D. Va. 2006), the district judge noted that the record "included excerpts from the deposition testimony of four <u>anonymous</u> executioners who work for the Virginia Department of Corrections." As discussed in Defendants' Motion for Protective

Order, the court ordered telephone depositions in the Jones case. Similarly, in Timberlake v. Donahue, 2007 WL 141950 (S.D. Ind. Jan. 16, 2007) (slip copy), the district judge confirmed in a pre-trial order that members of the execution team would provide anonymous testimony to protect their identity:

> The defendant's motion for reconsideration . . . is granted to the extent that any witness testifying as a member of the execution team will testify in such a manner as to preserve their anonymity and that counsel for the plaintiff will endeavor to eliminate or reduce the desired need for any such testimony through an interview to be conducted between counsel and the [State Prison] Superintendent . . . .

2007 WL 141950 (S.D. Ind. Jan. 16, 2007) (slip copy) (emphasis added).

Even if Grayson has an arguable need to discover information from these witnesses (as discussed above in Section I, he does not), Defendants also have an important interest in protecting the safety and anonymity of persons who participate in the execution process. Even though a court found that the state interest was not a sufficient reason to block all discovery, it nonetheless ruled that there must be a recognition of that state interest and appropriate measures taken to protect it:

> Defendants' contention regarding the need to protect the execution team members has self-evident merit.. . .. Counsel for the parties can confer to reach agreement on one or more of a wide range of devices that may be employed to provide the information requested to [plaintiff] without compromising the anonymity of execution team members.

Moore v. Rees, ___ F.Supp.2d ___, 2007 WL 1035013 (E.D.Ky. March 30, 2007).

The reported decisions and public documents do not, to the best of Defendants' knowledge, specify precisely what precautions were taken to preserve anonymity. Grayson has submitted "Motion to Correct Record" and affidavit of counsel containing testimony that purports to report what counsel for plaintiffs in other states have said (doc. no. 64 and exhibits). The affidavit states that counsel for other inmates "informed" Mr. Montross that they took "face-

to-face" depositions of execution team members in those other states. Defendants object to the Motion to Correct and affidavit on grounds that it is the very definition of hearsay -- "a statement made by the declarant while testifying at the trial or hearing, offred in evidence to prove the truth of the matter asserted." F.R.E. 801(c). It is not admissible evidence. F.R.E. 802. Defendants also object to the pleading and affidavit because there simply is not time for Defendants to properly respond or to conduct their own survey of counsel across the nation (the affidavit does not even give the names of the lawyers Mr. Montross interviewed). In fact this inability to respond appropriately is another example of how the expedited schedule and Grayson's dilatoriness in filing the complaint has prejudiced Defendants for purposes of Defendants' laches argument.

Every case Defendant found which discusses the matter recognized the importance of protecting the identity of the deponent. Defendants ask this Court to do the same. In light of the interests involved, it would, with respect, be an abuse of discretion to require "live" depositions, because only telephone depositions will provide the necessary safeguards to protect anonymity without impeding Grayson's ability to discover relevant information.

### IV.  TELEPHONE DEPOSITIONS ARE NECESSARY TO PROTECT THE STATE'S INTERESTS.

.     A "live" deposition, where Grayson's counsel are permitted to see exactly who these people are, and where they could be recognized during the deposition or in arriving for or leaving from the deposition, presents an unacceptable risk that the wintesses' identities will become known. It presents unnecessary risks related to the safety of the witnesses and their families, to the security of the Department of Corrections and prison officials, and may impact the ability of the Department to recruit qualified persons to assist with executions.

A "live" deposition does not provide adequate protection for the witnesses or the government, even with the other so-called safeguards in place, such as the protective order and the limited number of plaintiff's counsel who may be present. The interest in protecting anonymity is strong enough, and important enough, that the witnesses' identity should not be known to Grayson's counsel, to a court reporter, or to others at the site of the deposition who may learn that on that date, and at that place, execution team members will be present.

A telephone deposition, on the other hand, will provide added protection. The witnesses will call in and their location will remain unknown. No person will learn what they look like. There will be no opportunity for the public to know that an execution team member will be appearing at a particular place at a particular time. The witnesses can then have the peace of mind that their identity is not likely to be revealed, either purposefully or mistakenly, and they will not be subject to harassment or worse.

There is no doubt that this Court has the discretion and ability to order that depositions be taken by telephone where necessary to protect the interest identified by Defendants. Telephone depositions are expressly allowed by the Federal Rules of Civil Procedure. F.R.C.P. 30(b)(7). Rule 26 allows the Court to enter "any order which justice requires to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense, including . . . (2) that the disclosure or discovery may be had only on specified terms and conditions, . . . ; (3) that the discovery may be had only by a method of discovery other than that selected by the party seeking discovery; [and] (5) that discovery be conducted with no one present except persons designated by the court; …."

Anonymous depositions were good enough in other cases, good enough for Judge Moorer and Grayson's counsel in the <u>Jones</u> case, and they are good enough here.[2] Therefore, to protect the interest of preserving the anonymity, safety and privacy of execution team members, Defendants object to the portion of the Magistrate Judge's order requiring live depositions of EMT-1, EMT-2, DOC-2, and DOC-2. Defendants ask instead that this Court enter an order requiring that those four depositions be conducted by telephone.

### V.   GRAYSON SHOULD NOT BE ALLOWED TO DEPOSE THE RN.

In the <u>Jones</u> case, the plaintiff requested the deposition of the same RN noticed by Grayson. Judge Moorer ordered as follows:

> The nurse who trained the warden is unavailable for deposition. The nurse is not a member of the execution team, and has no role in the implementation of the Execution Protocol. Even if she were available, the court is doubtful that she could provide information relevant to Jones' claim. The court denies the request to depose the nurse who trained the warden.

Moorer Order at pp. 5-6. Counsel for Jones, who are also now counsel for Grayson, did not object to this portion of Judge Moorer's order.

Although the RN has since been located, Judge Moorer's findings remain correct. The RN cannot provide information relevant to the claims herein, and any information about training can be obtained through other depositions (the Warden has already been deposed in <u>Jones</u>, and Jones' counsel have now appeared in this matter). Grayson says he wants to know what training the Warden and DOC officials received from the nurse. If that is the case, then it seems to Defendant that the real issue would be what these officials understood and recall about the training, and this can be discovered by other depositions.

---

[2] Plaintiff's counsel say that they did not object to the order for telephone depositions in <u>Jones</u> because the schedule in that case was tighter than we have here. But the schedule is certainly tight in this case as well, and the time differential does not change the fact that all parties, and the court, recognized in <u>Jones</u> that the plaintiff could learn what he needed to learn even if the depositions were not face-to-face.

## VI. GRAYSON'S COUNSEL SHOULD NOT BE PERMITTED TO DISCOVER IDENTIFYING INFORMATION.

The Magistrate Judge's Order does not appear to expressly address whether Grayson's counsel are permitted to discover the names or other identifying information about the witnesses. Because counsel will, under the Magistrate Judge's order, be permitted to identify the witnesses by appearance, Defendants are concerned about how the order may be interpreted. Defendants therefore ask for a clarification that Grayson not be permitted to discover the witnesses' name, date of birth, home address, or other information that a person could use to specifically identify the witness.

## VII. REQUEST FOR CLARIFICATION OF ORDER AS IT RELATES TO THE WITNESSES LICENSING INFORMATION.

The Magistrate Judge ordered Defendants to request <u>and obtain</u> information from third-party agencies, related to the witnesses' licenses, prior to their depositions. These depositions will have to begin in a matter of days. Defendants are working to comply with this requirement, but at this time Defendants do not know if it is in any way possible to receive the requested information so quickly, particularly in written form.

It bears repeating that the reason there is insufficient time to comply with all of the Magistrate Judge's requirements is that Grayson waited too late to file his lawsuit. The case could have been filed years ago, even during the time period when Grayson was litigating his earlier § 1983 lawsuit (and for which he effectively received a stay of execution). But he waited until that action was over. Then nothing happened in this case for months, until an execution date was set. Only then did Grayson take interest in this action and, over Defendants' objection, the Court expedited discovery. In the weeks that are left, Defendants will have to respond to a motion to stay, brief that issue on appeal (regardless of how the Court rules), prepare for and

participate in at least five fact depositions, prepare for and participate in at least two expert depositions, and perform the myriad other tasks necessary to prepare for trial.

It simply is not fair to require Defendants to obtain this third-party information so quickly when it is in the hands of agencies that Defendants do not control. While it would be ideal to have this information prior to the Depositions, it may simply not be possible. Defendants will make every effort to comply and will turn over the information in redacted form when received, but Defendants should not be required (on top of all else that must be done on this expedited schedule) to shortcut the subpoena process and require state agencies, who are not before the Court, to release the information and documents on an expedited basis. To the extent it is outside Defendants' control, Defendants object.

For the foregoing reasons, Defendants respectfully request this Court vacate the part of the Magistrate Judge's order entered on May 11 requiring live depositions of five witnesses and instead order that the depositions of EMT-1, EMT-2, DOC-1, and DOC-2 be conducted by telephone; that Grayson not be allowed to depose the RN or in the alternative that the RN be deposed by telephone; that Grayson's counsel not be permitted to discover identifying information; and that Defendants not be required to receive, obtain, and produce licensing information from third-party agencies prior to the depositions.

                                        TROY KING (KIN047)
                                        ATTORNEY GENERAL
                                        BY:

                                        s/ JAMES W. DAVIS
                                        J. Clayton Crenshaw  (CRE007)
                                        James W. Davis  (DAV103)
                                        Assistant Attorney Genera

OF COUNSEL:

Office of the Attorney General
11 South Union Street
Montgomery, AL 36130
(334) 242-7300
(334) 353-8440 Fax
Email: jimdavis@ago.state.al.us

## CERTIFICATE OF SERVICE

I hereby certify that on May 14, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: **Richard S. Jaffe, Stephen B. Bright, Melanie Velez, Stephanie L. Cohen, Vincent R. Fitzpatrick, Jr., William Robert Montross, Jr., and Heather K. McDevitt.**


                              s/ JAMES W. DAVIS
                              OF COUNSEL