IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

DARRELL GRAYSON,                    )
                                   )
        Plaintiff,                 )
                                   )
    v.                             )    CASE NO. 2:06-cv-1032-WKW
                                   )
RICHARD ALLEN, *et al.,*           )
                                   )
        Defendants.                )

## MEMORANDUM OPINION

Darrell Grayson is a death row inmate who filed this § 1983 challenge to Alabama's

lethal injection protocol and its administration.    Defendant Richard Allen is the

Commissioner of Alabama's Department of Corrections.    Defendant Grantt Culliver is the

Warden of the Holman Correctional Facility, the facility in which executions are conducted.

By Order (Doc. # 76) dated May 17, 2007, the court denied the defendants' summary

judgment motion regarding the statute of limitations (Doc. # 14), granted the defendants'

Motion for Summary Dismissal Based on the Doctrine of Laches (Doc. # 27), and denied the

plaintiff's Motion for Stay of Execution (Doc. # 48).[1]  This memorandum opinion establishes

the bases for the rulings.

### I. BACKGROUND

---

[1] Defendants raised the statute of limitations and laches as defenses in their answer (Doc. # 8) and amended answer (Doc. # 33). The statute of limitations was the basis for defendants' motion for summary judgment (Doc. # 14), which was amended to include laches as an alternative ground after the publication of *Jones v. Allen,* __ F. Supp. 2d __, No. 2:06-cv-986, 2007 WL 1140416 (M.D. Ala. Apr. 17, 2007). (Doc. # 26.) Defendants also moved for summary dismissal on the doctrine of laches (Doc. # 27) and used laches arguments to underpin their objections to a proposed trial date (Docs. # 37 & # 41.) The court denied a motion to stay discovery (Doc. # 55) filed by defendants; however, the May 17 Order subsequently stayed all discovery. (Doc. # 76.)

Grayson is on Alabama's death row for the December 24, 1980 robbery, rape, and murder of an elderly widow, Mrs. Annie Laura Orr.[2]  The following is a summary of his conviction and post-conviction proceedings.

## A.     State Court Direct Proceedings

**June 3, 1982**:  In the Circuit Court of Shelby County, Alabama, a jury convicted Grayson of capital murder and determined that he should be punished by death.  The trial court sentenced Grayson to death by electrocution.

**January 31, 1984**:  The Alabama Court of Criminal Appeals affirmed the conviction and death sentence.  *Grayson v. State*, 479 So. 2d 69 (Ala. Crim. App. 1984).

**February 15, 1985**:  The Alabama Supreme Court affirmed the judgment of the intermediate appellate court.  *Ex parte Grayson*, 479 So. 2d 76 (Ala. 1985).

**October 7, 1985**:  The United States Supreme Court denied Grayson's petition for writ of certiorari.  *Grayson v. Alabama*, 474 U.S. 865 (1985).

## B.     State Court Collateral Proceedings

**January 10, 1986**:  Grayson filed a petition for relief from conviction and sentence of death, which was amended three times in 1991 and 1992.[3]

**April 6 & 7, 1992**:  The Circuit Court of Shelby County, Alabama, held an evidentiary

---

[2]  In its opinion affirming the denial of Grayson's petition for habeas relief, the Eleventh Circuit Court of Appeals detailed the facts of his offense as found by the state trial court.  *See Grayson v. Thompson*, 257 F.3d 1194 (11th Cir. 2001).

[3]  The petition was originally filed as a petition for the writ of error *coram nobis*, which was later replaced by post-conviction relief under Rule 32 of the Alabama Rules of Criminal Procedure.  *See Grayson v. State*, 675 So. 2d 516, 519 n.1 (Ala. Crim. App. 1995).

hearing on the petition.

**January 19, 1993**: The Circuit Court of Shelby County, Alabama, denied Grayson's petition

for post-conviction relief.

**December 1, 1995**: The Alabama Court of Criminal Appeals affirmed the denial of the

petition. *Grayson v. State*, 675 So. 2d 516 (Ala. Crim. App. 1995).

**March 1, 1996**: The Alabama Supreme Court denied certiorari review.

**October 15, 1996**: The United States Supreme Court denied Grayson's petition for writ of

certiorari. *Grayson v. Alabama*, 519 U.S. 934 (1996).

*C.    Federal Habeas Proceedings*

**April 22, 1996**: Grayson filed a petition for writ of habeas corpus in the United States

District Court for the Northern District of Alabama.

**March 31, 2000**: The district court denied the petition for habeas relief.

**July 16, 2001**: The Eleventh Circuit Court of Appeals affirmed the district court's denial of

habeas relief. *Grayson v. Thompson*, 257 F.3d 1194 (11th Cir. 2001).

**June 28, 2002**: The United States Supreme Court denied Grayson's petition for writ of

certiorari. *Grayson v. Alabama*, 536 U.S. 964 (2002).

*D.    Intervening Legal Event*

**July 1, 2002**: Alabama law establishing lethal injection as the primary form of execution

became effective. Ala. Code § 15-18.82.1 (1975). This statute provided death row

inmates thirty days to elect death by electrocution.

*E.    § 1983 DNA Lawsuit*

**2002**:  Grayson filed a motion in the state trial court to obtain the biological evidence

   presented at trial so he could have DNA testing performed on the evidence.

**August 12, 2002**:  The State of Alabama petitioned the Alabama Supreme Court to set an

   execution date for Grayson.

**October 10, 2002**:  The state trial court denied the DNA motion for lack of jurisdiction.

**November 15, 2002**:  Grayson filed a § 1983 action in the United States District Court for

   the Northern District of Alabama seeking the release of biological evidence for DNA

   testing.  *Grayson v. Pryor*, No. 2:02-cv-02800.

**May 22, 2003**:  The Alabama Supreme Court denied the state's petition to set execution date

   pending a ruling in the § 1983 DNA action.

**September 15, 2005**:  The district court granted a Rule 12(b)(6) motion to dismiss on the

   grounds that Grayson had no constitutional right to post-conviction access to DNA

   evidence.

**August 18, 2006**:  The Eleventh Circuit Court of Appeals affirmed the district court's

   dismissal of the DNA lawsuit.  *Grayson v. King*, 460 F.3d 1328 (11th Cir. 2006).

**January 8, 2007**:  The United States Supreme Court  denied Grayson's petition for writ of

   certiorari.  *Grayson v. King*, __U.S. __, 127 S. Ct. 1005 (2007) (mem.).

*F.    Intervening Legal Events*

**May 24, 2004**:  The United States Supreme Court ruled that § 1983 is an appropriate vehicle

4

for a death row inmate to challenge Alabama's proposed use of a "cut-down" procedure to access his veins during lethal injection procedure. *Nelson v. Campbell*, 541 U.S. 637 (2006).

**June 12, 2006**:  The United States Supreme Court ruled that death row inmate's challenge to Florida's lethal injection may proceed as an action for relief under § 1983. *Hill v. McDonough*, __ U.S. __ , 126 S. Ct. 2096 (2006).

## II.  PROCEDURAL HISTORY

**November 17, 2006**:  Grayson filed the instant § 1983 action challenging Alabama's lethal injection protocol.  He claims that the state's execution method and procedure pose an unjustifiable risk of causing him extreme pain in violation of the Eighth and Fourteenth Amendments to the Constitution.  (Doc. # 1.)

**January 22, 2007**:  The State of Alabama petitioned the Alabama Supreme Court to set an execution date for Grayson.

**March 6, 2007**:  The parties filed their initial Joint Rule 26(f) Report, agreeing *inter alia* to a hearing date of June 4, 2008.  (Doc. # 12.)

**March 14, 2007**:   The defendants filed a motion for judgment on the pleadings and alternative motion for summary judgment regarding the statute of limitations.[4]  (Doc. # 14.)

---

[4] Defendants' summary judgment motion was made in the alternative to its motion for judgment on the pleadings.  "Because the court will consider matters outside the pleadings, the defendants' motion for judgment on the pleadings" was denied by Order dated May 8, 2007.  (Doc. # 60.)

**April 23, 2007**:  The Alabama Supreme Court entered an order setting Grayson's execution date for July 26, 2007.

**April 24, 2007**:  The defendants filed a motion for summary dismissal of the case based on the doctrine of laches.  (Doc. # 27.)

**April 25, 2007**:  The court received notice of the July 26, 2007 execution date. (Doc. # 31.)

**April 25, 2007**:  The court held a status conference at which a potential trial date was set for June 26, 2007, and the parties were ordered to submit an amended Rule 26(f) report.

**April 27, 2007**:  The defendants filed an objection to setting a trial date and expedited discovery (Doc. # 37), and the parties filed their amended Joint Rule 26(f) Report. (Doc. # 42.)

**April 30, 2007**:  Grayson filed a motion for stay of execution to be decided after the merits of his claim are presented at trial on June 26, 2007.  (Doc. # 48.)

**May 1, 2007**:  The court entered a scheduling order setting a trial date for June 26, 2007, and requiring the parties to proceed with discovery pending further ruling from the court on the defendants' dispositive motions.  (Doc. # 52.)

**May 4, 2007**:  The defendants filed a motion to stay discovery pending the court's rulings on the defendants' dispositive motions.  (Doc. # 55.)

**May 7, 2007**:  The defendants filed a motion in the Alabama Supreme Court to accelerate Grayson's execution date.

**May 8, 2007**:  The court denied the defendants' motion to stay discovery pending a ruling

6

on dispositive motions.  (Doc. # 60.)

**May 17, 2007**: The court entered an order staying discovery and dismissing the case.

(Doc. # 76.)

### III.  JURISDICTION AND VENUE

The court exercises subject matter jurisdiction over this action pursuant to 28 U.S.C.

§ 1331 (federal question) and 28 U.S.C. § 1343 (civil rights).  The parties do not contest

personal jurisdiction or venue, and the court finds adequate allegations in support of both.

### IV.  STANDARD OF REVIEW

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is

appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no genuine issue as to any material fact

and that the moving party is entitled to a judgment as a matter of law."  *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 322 (1986).  After the nonmoving party has responded to the motion

for summary judgment, the court must grant summary judgment if there is no genuine issue

of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ.

P. 56(c).

### V.  DISCUSSION

This case highlights a difficult dilemma: at what point has a § 1983 litigant in a

method-of-execution claim slept on his rights too long, requiring dismissal of his action?

Defendants frame the dismissal issue in legal terms, *i.e.*, the statute of limitations, and in

7

equitable terms, *i.e.*, the doctrine of laches.[5]  Both are raised in defendants' dispositive motions.  Grayson denies that these arguments bar his claim.  The case arises, as will many, in the new context of § 1983 litigation challenging lethal injection in the wake of *Hill v. McDonough*.  While Grayson's is not a "last minute" claim – he filed this action two months before an execution date was requested  – it comes late in the litigation day, after the exhaustion, over the span of twenty-four years, of all state and federal avenues of relief, including direct appeal and collateral appeal in state court, a habeas action in federal court, and, uniquely, a previous § 1983 action in federal court, just concluded in January 2007.

Five months after filing this action, the Alabama Supreme Court set Grayson's execution date ninety-three days out.  This created a second issue:  whether the court could reach the merits of the matter in a hearing and decide Grayson's claim prior to his execution date.  Because Grayson has asked for a stay *after* a hearing on the merits, the court must decide whether such a hearing is possible over the legal objections of the defendants and notwithstanding the practical obstacles of expedited litigation.  Resolution of this issue is a purely equitable exercise.

While at first blush it may appear that the strong equitable presumption against a stay[6] is not implicated when there is no motion for a *present or immediate* stay, in fact it is

---

[5] Defendants also argue that the plaintiff's claim is barred by collateral estoppel.  Because the court finds the case is due to be dismissed on equitable grounds, it need not address this argument.

[6] *See Nelson v. Campbell*, 541 U.S. 637, 650 (2004) ("[T]here is a strong equitable presumption against the grant of a stay where a claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay.").

implicated.  "Consideration of the merits" means more than a hurried hearing by a harried judge and counsel.  As the Eleventh Circuit intimated in *Jones*, consideration of the merits in this circuit means full adjudication, entailing a sufficient period to conduct discovery, depose experts, and litigate the issue on the merits, including any appeals. *Jones v. Allen*, __ F.3d __, No. 07-11840, 2007 WL 1225393, at *3 n.2 (11th Cir. Apr. 27, 2007).  Where full adjudication is not possible, the result is either a stay or an execution.  Therefore, if full adjudication is not possible on a fast-track schedule here, then the issue of a stay of execution arises, and the strong equitable presumption is at hand and must be applied.

Similar issues, in a factually similar case, have very recently been litigated in this district and reviewed by the Eleventh Circuit.  In *Jones*, Judge Thompson thoroughly addressed the statute of limitations issue in a summary judgment procedural stance and weighed the equities in considering the motion for stay of execution.  Because the Eleventh Circuit affirmed *Jones*,[7] the court will naturally turn to that case for precedential guidance on these issues.[8]  The court first addresses the statute of limitations argument.

**A.    *Statute of Limitations***

Defendants, relying on *Cooey v. Strickland*, 479 F.3d 412 (6th Cir. 2007), argue that Grayson's complaint should be dismissed because it was untimely filed under the relevant

---

[7] The district court in *Jones* denied the defendants' motion for summary judgment based on statute of limitations grounds.  The defendants did not appeal that decision, and the Eleventh Circuit did not consider the issue. *Jones*, 2007 WL 1225393, at *4 n.1.

[8] It must be noted at this juncture that the defendants in *Jones* did not argue that Jones's claim should be dismissed on the basis of laches; therefore, neither the district nor the appellate court addressed that argument.

9

limitations period. In *Cooey*, a split panel of the Sixth Circuit Court of Appeals held that the limitations period on a § 1983 method-of-execution claim begins to run upon either the conclusion of direct review of the conviction and sentence or the date on which the state adopted the complained-of execution method, whichever is later. *Id*. at 422. Grayson filed his complaint twenty-one years after the conclusion of his direct review and over four years after Alabama adopted lethal injection as its primary method of execution. Applying the *Cooey* reasoning, the defendants conclude that Grayson's claim should be time-barred because Alabama's two year limitations period expired prior to the filing of the claim.

In deciding a nearly identical motion in a factually similar case, Judge Thompson rejected the defendants' statute of limitations argument. *Jones*, 2007 WL 1140416. The court concurs with Judge Thompson, adopts his reasoning by reference,[9] and turns its attention to an analysis of the equitable considerations of this case.

**B.    *Doctrine of Laches***

The court is called upon to decide whether Grayson has unreasonably delayed in bringing this § 1983 method-of-execution challenge. Grayson insists that the matter can be heard on an expedited schedule prior to his execution date, with consideration of a stay following the hearing. The defendants argue that the doctrine of laches bars this action because Grayson has no legitimate excuse for bringing the case so late in the day and they

---

[9] Judge Thompson reasoned that Jones's § 1983 claim was not time barred because the essence of Jones's complaint was to prevent an allegedly unconstitutional act (i.e., state mandated lethal injection) from occurring in the future. As such, a statute of limitations cannot attach to an act that has yet to occur and a tort that is not yet complete. Moreover, any equitable considerations are left to the court's discretion in determining whether to grant a stay of execution, rather than as a vital element in a statute of limitations defense.

are unduly prejudiced by fast-track litigation, which cannot result in a full adjudication on the merits.  Upon due consideration of the law, arguments, and record before the court, the court agrees that, under the unique circumstances of this case, Grayson has tarried unreasonably and that this action is due to be dismissed.

### 2.    <u>General Laches</u>

Notwithstanding the fact that Grayson's claim is not barred by a statute of limitations, it is nonetheless barred by laches.  Laches is an equitable defense, a consideration separate from a statute of limitations and dependent on the facts of each case.  *Horton v. Kimbrell*, 819 So. 2d 601 , 606 (Ala. 2001);  *Merrill v. Merrill*, 71 So. 2d 44, 46 (Ala. 1954); *Woods v. Sanders*, 25 So. 2d 141, 144 (Ala. 1946) ("Laches is not fixed by a hard and fast limit of time, but is a principle of good conscience dependent on the facts of each case.").  If inequity would result from permitting a delayed claim to be enforced, laches applies, even if the claim is not yet barred by the statute of limitations.  *Gayle v. Pennington*, 64 So. 572, 577 (Ala. 1914).

It is true, as Grayson argues, that it does not appear that any court has applied a laches defense in the context of a challenge to a State's lethal injection proceeding.  However, the courts that have considered and rejected the argument did so at the motion to dismiss stage. *See Patton v. Jones*, No. Civ-06-0591-F, 2006 WL 2246441, at *4 (W.D. Okla. Aug. 4, 2006); *Nooner v. Norris*, No. 5:06-cv-00110 (Doc. # 24, at 7) (E. D. Ark. June 19, 2006). Here, the defendants amended their motion for summary judgment to include their argument

on the laches defense, which they pleaded as an affirmative defense in their answer and amended answer. Because the court has before it the evidentiary submissions of the parties, the concerns of the courts in *Patton* and *Nooner* do not exist here. Grayson suggests no other reason why laches cannot apply generally to this type of claim.

The application of the doctrine of laches is within the sound discretion of the trial court. *See Horton*, 819 So. 2d at 606. To establish the application of the doctrine, the defendant must show that the plaintiff delayed in asserting his claim, the delay was inexcusable, and the delay caused undue prejudice to the defendant. *Ex parte Lightwave Techs., L.L.C.*, ___ So. 2d. ___ , No. 1050996, 2007 WL 1229206, at *8 (Ala. Apr. 27, 2007) (internal quotation marks and citation omitted).[10] The court will address each element in turn.

### a.    Delay in Asserting Claim

Grayson's direct appeal concluded in October 1985, his state court collateral proceedings in October 1996, and his federal habeas proceedings in June 2002. In November 2002, Grayson filed a § 1983 action seeking blood and semen evidence for DNA testing in federal district court, where the action remained for thirty-four months until it was dismissed

---

[10] In their motion for summary dismissal based on laches, the defendants cite an Eleventh Circuit case for the elements of laches. *See Kason Indus., Inc. v. Component Hardware Group, Inc.*, 120 F.3d 1199, 1203 (11th Cir. 1997) (analyzing laches defense, which includes a look at analogous statute of limitations under Georgia law, in trade dress infringement claim under Lanham Act). A federal district court must apply state substantive law in non-diversity cases in the absence of a compelling federal interest. *See* 19 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4520 (2d ed. 1996); *see also Osman v. Hialeah Hous. Auth.*, 785 F.2d 1550 (11th Cir. 1986) (referencing state law in order to determine the existence of a property interest in § 1983 claim). In the absence of any compelling federal interest, Alabama law applies here.

on September 15, 2005.  Grayson filed the instant § 1983 action on November 17, 2006.

Grayson's failure to bring this claim at an earlier date constitutes delay.  This should come as no surprise to Grayson as the Eleventh Circuit in August 2006, in his first § 1983 action, questioned his litigation diligence and his timeliness in seeking the DNA evidence:

> Here, Grayson has enjoyed extensive judicial process over the years; indeed, it has been over twenty years since his conviction, and he now seeks to forestall his death sentence by seeking further process with minimal probable value.  Compelling interests – *e.g.*, guarding against a flood of requests, protecting the finality of convictions, and ensuring closure for victims and survivors – support the State's position in this case.

*Grayson*, 460 F.3d at 1342.  Grayson was specifically criticized for failing to raise the DNA issue in prior actions.  "Through those fifteen years of post-conviction proceedings – in both state and federal courts – . . . .  Grayson did not seek such [DNA] testing until 2002, when the State requested an execution date from the Alabama Supreme Court."  *Id.* at 1335.  The same observations apply here; this action could have been filed sooner, before Grayson was in the shadow of an execution date.

### b.    Excuse For Delay

Although "[l]apse of time alone does not establish laches," a plaintiff's inexcusable delay must be considered.  *Merrill*, 71 So. 2d at 46.  Grayson offers four reasons for not filing his claim earlier: (1) lethal injection was not an execution method in Alabama until July 1, 2002, two days after his federal habeas proceedings concluded; (2) § 1983 method-of-execution challenges were not available until after the Supreme Court's decision in *Hill*; (3) his claim was not ripe until execution was imminent; and (4) because Alabama's lethal

13

injection protocol was confidential, he did not know the facts underlying his claim.

(1)  Habeas Proceedings

Grayson asserts that his federal habeas proceedings concluded two days before the Alabama law setting lethal injection as the primary form of execution became effective. Grayson reasons that, unlike Jones, he could not have amended his habeas petition to include the instant claim.

Other than this one distinction, Jones and Grayson's cases are strikingly similar from a procedural viewpoint.  Jones filed his method-of-execution claim on November 1, 2006; Grayson filed on November 17, 2006.  Jones agreed to an extended discovery and trial period *after* the State requested an execution date; Grayson did the same, agreeing *six weeks after the State requested an execution date* to a fifteen-month litigation schedule.  (Doc. # 12.)[11] The State set Jones's execution date sixty-six days in the future, five months before the agreed trial date; Grayson's execution date was set ninety-three days in the future, over eleven months before the agreed trial date.  Indeed, "Grayson" could almost be substituted wherever "Jones" appears in the *Jones* opinion.

The Eleventh Circuit found that Jones could have amended his pending habeas petition to challenge lethal injection when the Alabama Legislature changed the method of execution in 2002.  Although Grayson's procedural background is distinguishable from Jones in that his habeas proceedings concluded before the change in law, making an amendment

---

[11]  The parties' original Rule 26 Report was filed on March 6, 2007; however, the court did not issue a scheduling order based on this filing.

14

to his petition impossible, the distinction makes no difference.    The Eleventh Circuit explained that Jones simply could have brought the claim sooner:

> We see no convincing reason why, after Alabama made lethal injection its primary method of execution, Jones could not have brought his method-of-execution challenge sooner than he did. . . . By waiting until November 2006 to file his challenge to the State's lethal injection protocol, Jones "leaves little doubt that the real purpose behind his claim is to seek a delay of his execution, not merely to effect an alteration of the manner in which it is carried out."

*Jones*, 2007 WL 1225393, at *3 (citation omitted). The court finds that Grayson also could have brought this claim sooner. He may not have been able to amend his habeas petition, but he could have sought authorization to file a second or successive habeas petition. *See* 28 U.S.C. § 2244(b)(2). Additionally, Grayson could have amended his earlier § 1983 action to include a method-of-execution claim. He offers no valid explanation for why he did not do so at some point during the thirty-four month pendency of his § 1983 action in district court.

### (2) *Hill v. McDonough*

Grayson's argument that § 1983 method-of-execution challenges were not available until after the Supreme Court's decision in *Hill* is unpersuasive. The history of method-of-execution litigation suggests that one should not risk the outcome Grayson now faces. In May 2004, *Nelson* opened the door to § 1983 actions challenging lethal injection.[12] Hill

---

[12] After the denial of habeas relief, Nelson filed a § 1983 action alleging that Alabama's proposed use of a "cut-down" procedure to access his veins during lethal injection constituted cruel and unusual punishment. The district court dismissed the claim because it was an unauthorized second or successive habeas petition. The Eleventh Circuit affirmed. The Supreme Court of the United States held that § 1983 was the appropriate vehicle for Nelson's claim. *Nelson*, 541 U.S. 637.

seized the opportunity first, but the opportunity was open to all, including Grayson. *See Rutherford v. Crosby*, 438 F.3d 1087, 1092 (11th Cir. 2006) ("Yet Hill filed the lawsuit without any grant of certiorari on the issue. Rutherford could have done exactly the same thing.") (*Rutherford I*), *vacated on other grounds*, *Rutherford v. McDonough*, __ U.S. __ , 126 S. Ct. 2915 (2006) (mem.). Certiorari was granted in *Hill* on January 25, 2006, and the opinion was published on June 12, 2006. This action was not filed until November 17, 2006, nearly 30 months after *Nelson* was published, over ten months after certiorari was granted in *Hill,* and over five months after the law was changed by *Hill*. These are windows of time that, if used wisely by Grayson, could have avoided the current dilemma. If Grayson faces a risk, it is a risk he assumed by unwisely sleeping on his rights.

Moreover, the Eleventh Circuit indicated how it views delays in method-of-execution cases in *Rutherford I*. Though *Rutherford I* dealt with a last minute request for a stay, the court specified that equitable principles in the context of a stay of execution are equally applicable to all types of equitable relief sought by inmates facing execution. *Rutherford I*, 438 F.3d at 1092 n.3 (citing *White v. Johnson*, 429 F.3d 572, 573-74 (5th Cir. 2005)). The *Rutherford I* court criticized the absence of a reason for Rutherford's delay. *Id.* at 1092. Without giving a reason for his delay, Grayson filed almost ten months after the *Rutherford I* opinion. The cases in this circuit that have dealt with this issue put Grayson on notice that delay in filing without justification could result in summary dismissal. *See Merrill*, 71 So. 2d at 46 (holding that "[n]otice does have influence on the question of laches"); *Oxford v.*

16

*Estes*, 158 So. 534, 538 (Ala. 1934) ("If facts are known which reasonably put one on inquiry, and which, if followed up, would readily discover the situation, the party is held chargeable with notice. He cannot close his eyes, and plead he does not see.").

(3)  <u>Ripeness of Claim</u>

Grayson claims that he "filed when his claim was ripe for adjudication." (Doc. # 53, at 4.) Grayson defines "ripeness" as when execution is imminent. (Doc. # 16, at 10.) This argument has been flatly rejected by the Eleventh Circuit:

> We need not determine with specificity when Jones's claim became ripe. However, we can say in any event that, even under Jones's definition of ripeness, there was far more than a "strong possibility" that Jones would be put to death by lethal injection by January 2006 (when we denied relief on Jones's habeas petition). Indeed, by January 2006, given the extremely small chance of securing certiorari review in the Supreme Court, it was all but guaranteed that Jones would die by lethal injection. Yet Jones has offered no reason at all for his decision to wait nearly ten additional months to file this suit.

*Jones*, 2007 WL 1225393, at *4 (internal citations omitted). If Jones was risking a short execution date when his habeas action concluded in January 2006, Grayson was much more at risk when his habeas proceeding concluded in June 2002.[13]

(4)  <u>Knowledge of Lethal Injection Protocol</u>

Grayson asserts that, because Alabama's lethal injection protocol was confidential, he did not know the facts underlying his claim. This is not a valid excuse. The court finds that Grayson either knew or should have known enough about the lethal injection protocol

---

[13] This conclusion is all the more evident in light of the State's 2002 request for an execution date to the Alabama Supreme Court, which was denied in 2003 over the dissent of three justices. (Doc. # 67, Ex. 1.)

in order to at least bring his claim. *See Oxford*, 158 So. at 538. Whatever the risks associated with lethal injection in Alabama, those risks have been known for years. Alabama uses the same three-drug protocol as twenty-nine of the thirty-seven lethal injection states and the United States government. *See Workman v. Bredesen,* __ F.3d __ , No. 07-5562, 2007 WL 1311330, at *8 (6th Cir. May 7, 2007). The protocol has been in use in Alabama for over four years and has been used in twelve executions. (Doc. # 48, Ex. 8-18.)[14] While the written procedures of the protocol have not been public, the drugs themselves have been known, and, as demonstrated in pending litigation, the written procedures are largely discoverable. Moreover, Grayson's technical knowledge of lethal injection matters is based upon the expert opinion of Dr. Mark Heath.[15] Dr. Heath's testimony has been used in this capacity in numerous lethal injection challenges across the country, one of which was filed as early as 2002.[16] Finally, lethal injection has been extensively challenged and litigated throughout the country, in some instances even before Alabama adopted the method. *See Sims v. State*, 754 So. 2d 657, 658 n.20 (Fla. 2000); *Hopkinson v. State*, 798 P. 2d 1186, 1187 (Wyo. 1990). If Grayson's sole motivation in bringing the present action were simply to ensure a constitutionally appropriate safeguard against cruel and unusual pain, other courts

---

[14] These reports detail eleven of the executions. Aaron Lee Jones, who was executed on May 3, 2007, is the twelfth.

[15] Dr. Heath's Declaration is attached to the plaintiff's motion for stay of execution. (Doc. # 48.)

[16] *See, e.g., Cooey v. Taft*, 430 F. Supp. 2d 702 (S.D. Ohio 2006); *Taylor v. Crawford*, 445 F.3d 1095 (8th Cir. 2006); *Evans v. Saar*, 412 F. Supp. 2d 519 (D. Md. 2006); *Abdur`Rahman v. Bredesen,* 181 S.W.3d 292 (Tenn. 2005) (filed July 26, 2002)*; Brown v. Crawford*, 408 F.3d 1027 (8th Cir. 2005); *Cooper v. Rimmer*, 358 F.3d 655 (9th Cir. 2004); *Reid v. Johnson*, 333 F. Supp. 2d 543 (E.D. Va. 2004); *Harris v. Johnson*; 323 F. Supp. 2d 797 (S.D. Tex. 2004).

have litigated the same or similar issues and have provided justifications for doing so in a timely fashion.[17]

No change in the law, or the protocol, or the level of Grayson's knowledge of the procedure prompted the timing of Grayson's suit. The issue is one of acquiescence and unreasonable delay. "Acquiescence involves knowledge of the facts which entitle [one] to relief, and manifests a want of diligence, which will not be allowed to prejudice adversary interests." *Veitch v. Woodward Iron Co.*, 76 So. 124, 129 (Ala. 1917). The court finds that Grayson's delay in bringing a § 1983 method-of-execution challenge is unreasonable and without legal excuse. The conclusion is almost inescapable that, in bringing this suit, Grayson was primarily motivated by his impending execution and the foreclosure of all other avenues of relief.

### c.    Undue Prejudice

The third element of the laches doctrine is undue prejudice to the party against whom the claim is asserted. "[T]o bar an action, laches requires either delay with notice of the existence of a right that results in a disadvantage to another, or delay which effects a change in circumstances such that the controversy cannot be determined with reasonable accuracy."

---

[17] *See, e.g., Harris v. Johnson*, 376 F.3d 414, 417 (5th Cir. 2004) (holding that "the very thing the plaintiff is not entitled to do" is "to wait until his execution is imminent before suing to enjoin the state's method of carrying it out."); *see also Reid*, 333 F. Supp. 2d 543; *Oken v. Sizer*, 321 F. Supp. 2d 658 (D. Md. 2004), *vacating the stay*, 542 U.S. 916 (2004); *Abdur`Rahman*, 181 S.W.3d 292, *cert. denied*,126 S. Ct. 2288 (2006).

*See Jones v. Braggs*, 637 So.2d 1356, 1359 (Ala. Ct. App. 1994).[18]    The classic characteristics of undue prejudice, for the purposes of determining the applicability of the doctrine of laches, include the unavailability of witnesses, changed personnel, and loss of evidence.  *Ex parte Grubbs*, 542 So. 2d 927, 929 (Ala. 1989).  These considerations are not necessarily in play here, yet laches still comes into operation "*if the court believes that, under the circumstances, it is too late to ascertain the merits of the controversy*."  *Id.* (citing *Meeks v. Meeks*, 37 So.2d 914 (1948)).

The defendants claim undue prejudice on two fronts.  First, they argue the State's strong interest in meting out a sentence of death in a timely manner acquires "an added moral dimension" when post-trial proceedings have run their course.  *See Calderon v. Thompson*, 523 U.S. 538, 556 (1998).  "To unsettle these expectations is to inflict a profound injury to the powerful and legitimate interest in punishing the guilty, an interest shared by the State and the victims of crime alike."  *Id.* (internal citation and quotation marks omitted).  Even a cursory review of Eleventh Circuit precedent, including Grayson's own prior § 1983 case, affirms this interest.  *See, e.g., Jones*, 2007 WL 1225393, at * 4 ("We will not interfere with the State's strong interest in enforcing its judgment in this case."); *Grayson*, 460 F.3d at 1342 ("[T]he government has a strong interest in the finality of duly adjudicated criminal judgments."); *Thompson v. Wainright,* 714 F.2d 1495, 1506 (11th Cir. 1983) ("Each delay,

---

[18]  This "reasonable accuracy" standard has evolved over the course of laches jurisprudence – from "safe determination," *Davis v. Thomaston*, 420 So.2d 82, 84 (Ala. 1982), which evolved from "difficult, if not [impossible] to do justice," *Woods*, 25 So. 2d at 144, which evolved from "at best . . . conjectural."  *Rives v. Morris*, 18 So. 743, 744 (Ala. 1895).

for its span, is a commutation of a death sentence to one of imprisonment."). The sentiment is firmly rooted in the jurisprudence of the circuit, and the court cannot ignore it.

Grayson asserts that the State does not have a legitimate interest in carrying out an execution by unconstitutional means. Certainly the defendants are not claiming a legitimate interest in an illegitimate method of execution. Grayson's argument merely begs the ultimate question. As will be seen, Grayson has produced no evidence suggesting a significant likelihood of success on the merits.

The defendants' second argument of undue prejudice is also well-taken. In short, the "temporal practicalities" of litigating on an expedited schedule work an undue hardship on the defendants. (Doc. # 67, at 6.) Prejudice is created because "Plaintiff's late filing has forced this case into a fast-track posture, setting a precedent that will likely be repeated over and over as future death row inmates file similar actions in an effort to delay their executions." (Doc. # 37, at 1.) Expedited litigation taxes the resources and schedules of the defendants. Notably, they report that their primary expert, Dr. Mark Derschwitz, is unavailable on the proposed trial date. Moreover, expedited cases create future inefficiencies, including the specter of each inmate demanding late in the day the same consideration given to Grayson. Defendants also point out that there is insufficient time for necessary pre-trial activities such as completion of fact and expert discovery followed by dispositive motions. They further question how complete the record can be when litigating at this pace. Finally, they repeat the observations of Judge Thompson in *Jones*:

Jones maintains that this case can be resolved in the court on the merits within two to three months. The court finds such an assertion dubious. First, if the court were to find in favor of Jones on the merits, fashioning relief . . . would take much more than three months. Second, regardless of whether Jones prevailed or not, an appeal would be certain and would add months, if not years, to this litigation.

*Jones*, 2007 WL 1140416 at *10.[19]

Grayson insists the merits can be reached in time for a fair and full consideration, but his actions belie that claim. Six weeks after the State requested an execution date, Grayson agreed to a fifteen month litigation schedule in the first Rule 26(f) report of the parties. In the proposed plan, the parties reported, without any hesitation on Grayson's part, that "the case *should be ready for a hearing by June 4, 2008*." (Doc. # 12) (emphasis added). This fifteen month litigation timeline is a virtual blueprint for adjudication of this case on the merits in the district court.[20] Obviously a product of a deliberative process, this agreement is *prima facie* evidence of Grayson's true opinion as to what it would take to fully litigate his vital interests.

Moreover, given Alabama's well-known pattern for setting execution dates, Grayson could not have agreed to this schedule without a stay in mind. *See Jones*, 2007 WL 1225393, at *3 n.2 ("[O]ne of the most naturally foreseeable risks facing an inmate who waits to file

---

[19]    With the suggestion of a June 26, 2007 trial date, the court was willing to accommodate the parties for a hearing on the merits in time for meaningful appellate review, but it did not intend to do so to the undue prejudice of one or both of the parties, nor did it intend to litigate on less than the full merits, absent agreement of the parties. The court was willing to operate on that timetable, but it would have required a significant measure of cooperation on the part of the parties. Almost immediately the defendants claimed undue prejudice and, in fact, intensified their insistence on dismissal based on laches. Under the circumstances, the court has concluded that expedited resolution on the merits is impossible.

[20]    Other method-of-execution cases are before the court, and the litigation timelines are unique to each.

his method-of-execution challenge until many months after his federal habeas petition has been denied on appeal is that an execution date will be set during the pendency of the proceedings, *thus necessitating the entry of a stay if full adjudication and an appeal are to be had*. This risk is particularly foreseeable in Alabama . . . ." (emphasis added)).[21] To claim now that the case can be fully adjudicated without a stay strains credibility. Grayson is chargeable with "delay with notice" of his rights, a delay that in equity results in undue prejudice to the defendants. *Jones*, 637 So. 2d at 1359.

As noted above, full adjudication entails adequate time to conduct discovery, depose experts, engage in appropriate motion practice, litigate on the merits, and complete any appeals. Having reviewed all of the briefing on Grayson's motion for stay of execution and the voluminous exhibits attached to them and having observed the pace and scope of discovery, the court now concurs in the *Jones* courts' findings that trial on the merits "would take 'much more than three months' and that a subsequent appeal 'would add months, if not years, to this litigation.'" *See Jones*, 2007 WL 1225393, at *3 n.2 (citing *Jones*, 2007 WL 1140416, at *10). However, these cases involve issues of highest public interest and moral concern and should be treated with the dignity that accompanies, or should accompany, all debates about ending human life. The ability of the court to manage its docket and do justice to these issues should demand a thoughtful and deliberative process that is frequently missing

---

[21] There is no indication in the record that the State's January 2007 request for an execution date excited any urgency in Grayson's litigation camp.

in death penalty litigation.[22]

The court has fully weighed the unique circumstances of this case, including Grayson's inexcusable delay in bringing his claim, as evidenced in part by his failure to bring the claim in his prior § 1983 action, his recent agreement to a fifteen month litigation schedule when he knew his execution was imminent, and the lack of sufficient time to fully adjudicate this case on the merits which operates to the prejudice of the defendants. Therefore, the court finds that the doctrine of laches bars Grayson from prosecuting this action, the defendants are entitled to summary judgment, and this action should be dismissed.

## C.    *Equitable Presumption Against Stay of Execution*

Even if ordinary laches principles did not require dismissal of the action, Grayson's motion to stay the execution is still due to be denied.

"[B]efore granting a stay, a district court must consider not only the likelihood of success on the merits and the relative harms to the parties, but also the extent to which the inmate has delayed unnecessarily in bringing the claim." *Nelson*, 541 U.S. at 649-50. These requirements for a stay are the familiar four factors a court considers for injunctive relief:

---

[22] Examples of confusion, indecision, and calamity are not rare in these cases. *See Morales v. Tilton*, 465 F. Supp. 2d 972 (N.D. Cal. 2006); *Taylor v. Crawford*, No. 05-4173, 2006 WL 1779035 (W.D. Mo. June 26, 2006). Grayson cites *Morales* and *Taylor* as examples of "courts in multiple jurisdictions [holding] various lethal injections processes violative of the Eighth and Fourteenth Amendments." (Doc. # 16, at 13.) However, these two cases are also examples of district courts under intense pressure to manage the essentially unmanageable.

*Morales* required a stay of execution and over seventeen months of protracted, piecemeal litigation just to get to an upcoming status conference, and the trial and appeals on the merits are distant probabilities; *Taylor* required a stay of execution and a year and three days, as well as much involvement and prodding of the circuit court, to get to a decision on the merits, and remains on appeal seventeen months later. Judge Thompson's description of what it would likely require to have a hearing on the merits in *Jones* was not inaccurate, and the application here is apt.

24

(1) whether there is a substantial likelihood of success on the merits; (2) whether the requested action is necessary to prevent irreparable injury; (3) whether the threatened injury outweighs the harm the stay or injunction would inflict upon the non-movant; and (4) whether the requested action would serve the public interest.

*Rutherford v. McDonough*, 466 F.3d 970, 979 (11th Cir. 2006) (*Rutherford II*) (Wilson, J., dissenting).[23] The Supreme Court has also noted that a stay is an equitable remedy that must be sensitive to the State's strong interest in enforcing its criminal judgments. *Hill*, 126 S. Ct. at 2104; *Nelson*, 541 U.S. at 649-50. As such, "there is a strong equitable presumption against the grant of a stay where a claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay." *Nelson*, 541 U.S. at 650.

It would be disingenuous not to conclude that Grayson, should his claim prove meritorious, clearly would suffer irreparable injury if the stay is not granted. On the other hand, the State, the general public, and the victim's family have an interest in seeing Grayson's litigation come to an end. Moreover, the court must apply the strong equitable presumption against the grant of stay in light of Grayson's unnecessary delay in bringing this claim, which has been detailed above. Because Grayson fails to establish a significant likelihood of success on the merits, the court cannot conclude that the threatened injury to Grayson outweighs the interests of the State in enforcing its judgment.

Grayson cannot show a likelihood of success on the merits, much less a significant likelihood. Grayson attempts to deflect the issue by insisting that a hearing on the merits

---

[23] Courts also apply the four part test in determining whether to grant a stay under 28 U.S.C. § 2251. *See Bundy v. Wainwright*, 808 F.2d 1410, 1421 (11th Cir. 1987).

should go forward on the suggested date, after which the success or failure of his claim on the merits will be obvious. But this is a faulty premise. First, it assumes that a full and fair adjudication could be achieved on the litigation fast-track. The court, as noted above, has determined that this is unlikely under the circumstances. Second, Grayson's representation to the court that the case "should be ready by June 4, 2008," exposes Grayson's true intent to seek to delay his execution. He knew the clock was ticking; he could not have agreed to a fifteen month trial schedule without a stay in mind. Finally, even if Grayson could establish the likelihood of success on the merits at a hearing, he is still not entitled to a stay as of right. *Nelson*, 541 U.S. at 649. As counterintuitive as it may seem to Grayson, likelihood of success on the merits is merely one factor in the stay analysis. It may or may not be sufficient to overcome the other factors and the strong presumption against a stay.

The court need not make that determination here because Grayson's allegations and evidentiary submissions (which have been substantial, though without the benefit of full discovery) fail to establish the likelihood of success on the merits and, consequently, any further need for a hearing, abridged or otherwise. Grayson's argument on the merits is entirely speculative: "*If* Mr. Grayson is not properly sedated, . . . *if* the drugs are not properly prepared, . . . *if* the drugs are not properly administered, or *if* the procedure is performed by individuals not properly trained and supervised, Mr. Grayson will suffer irreparable harm in the form of unnecessary and excruciating pain." (Doc. # 48, at 17-18) (emphasis added). What the evidence does *not* establish is relevant to this analysis: (1) any

26

execution "mishap" in an Alabama lethal injection execution; (2) any cruel or unusual pain suffered by an inmate in an Alabama lethal injection execution; (3) any mishap in the delivery or injection of the three-drug mix in Alabama; or (4) any other compelling reason that suggests a substantial risk of cruel and unusual pain in future lethal injection executions in Alabama. Grayson's arguments, and the evidence upon which they are based, do not establish a significant likelihood of success on the merits.

Grayson alleges lethal injection mishaps in other states, which are regrettable if true; however, they are not probative of risks in Alabama because they fail to account for differences in training, facilities, drug amounts, personnel, administrative protocols, equipment, and the innumerable other factors that can affect outcomes.[24] Additionally, Grayson's likelihood of success is also dim in view of the lack of support of current law:

> No court to our knowledge has issued a final decision declaring a State's lethal-injection protocol unconstitutional. And several lower courts have upheld this specific three-drug, lethal-injection protocol. One cannot credibly establish a likelihood of success in attacking a death-penalty procedure when the theory of success has yet to succeed in a considerable number of cases over a considerable number of years.

*Workman,* 2007 WL 1311330, at *8 (internal citations omitted). It is also bears noting that the first objective of the three-drug protocol is to avoid unconstitutional pain. No jurisdiction is required to ensure or guarantee the absolute absence of *any* risk of pain in executions:

> We thus do not have a situation where the State has any intent (or anything approaching intent) to inflict unnecessary pain; the complaint is that the State's *pain-avoidance procedure* may fail because the executioners may make a

---

[24] But they may be relevant to inform the opinion of experts.

> mistake in implementing it.  But no one has demonstrated that this problem has occurred in Tennessee in the past . . . .  The risk of negligence in implementing a death-penalty procedure, particularly when the risk has not come to pass in the State, does not establish a cognizable Eighth Amendment claim.  At some level, every execution procedure ever used contains risk that the individual's death will not be entirely pain free.

*Id.* at *10.  The absence of evidence of a mishap, or even the risk of something more than negligence, not only controverts Grayson's claim, but it also significantly diminishes the probative value of training and procedural deficiencies that he alleges exist in Alabama's system.

Because Grayson has delayed unreasonably in seeking relief, the court *must apply* the strong equitable presumption against a stay.  Grayson's proffered evidence and arguments are insufficient to overcome the presumption.  Grayson's conviction and death sentence have withstood decades of review and attack.  The equities now lie with the State of Alabama to enforce its criminal judgment.

## VI.  CONCLUSION

For the foregoing reasons, this case was dismissed.  An appropriate judgment will be entered.

DONE this the 21st day of May, 2007.

> _____/s/  W.  Keith Watkins_____
> UNITED STATES DISTRICT JUDGE

28