**GRAYSON v. ALLEN** 2842

**CORRECTED** — **ORIGINAL**

Darrell GRAYSON, Plaintiff–Appellant,

v.

Richard ALLEN, Commissioner, Alabama Department of Corrections, in his individual and official capacities, Grantt Culliver, Warden, Holman Correctional Facility, in his individual and official capacities, Defendants–Appellees.

No. 07–12364

Non–Argument Calendar.

United States Court of Appeals, Eleventh Circuit.

July 16, 2007.

**Background:** Death row inmate, who already had brought unsuccessful federal habeas corpus petition and § 1983 action seeking access to biological evidence used at trial, brought second § 1983 action, this time challenging Alabama's three-drug lethal injection protocol and seeking injunctive relief. State filed motion to dismiss. The United States District Court for the Middle District of Alabama, No. 06-01032-CV-WKW, W. Keith Watkins, J., 2007 WL 1491009, dismissed action, and inmate appealed.

**Holdings:** The Court of Appeals, Hull, Circuit Judge, held that:

(1) the district court did not clearly err in finding that inmate unreasonably delayed in filing his § 1983 challenge to Alabama's lethal injection protocol, and

(2) the district court did not abuse its discretion in dismissing the § 1983 action due to inmate's unreasonable delay.

Affirmed.

See also 257 F.3d 1194.

**1. Federal Courts** ⚖=813

Court of Appeals reviews the district court's denial of equitable relief for abuse of discretion.

**2. Federal Courts** ⚖=776, 870.1

Court of Appeals reviews any factual findings made by the district court in support of its denial of an injunction for clear error and underlying questions of law de novo.

**3. Federal Courts** ⚖=818

Court of Appeals would review, for abuse of discretion, district court's dismissal, on grounds of inexcusable delay, of death row inmate's § 1983 method-of-execution challenge. 42 U.S.C.A. § 1983.

**4. Injunction** ⚖=1

Injunctive relief is an equitable remedy that is not available as a matter of right.

**5. Civil Rights** ⚖=1454

Equitable principles at issue when inmates facing imminent execution delay in raising their § 1983 method-of-execution challenges are equally applicable to requests for both stays and injunctive relief. 42 U.S.C.A. § 1983.

**6. Civil Rights** ⚖=1382

Courts considering dismissal of a dilatory § 1983 suit seeking injunctive relief should recognize the strong equitable presumption against the grant of a stay where a claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay. 42 U.S.C.A. § 1983.

Synopsis, Headnotes and Key Number Classification
COPYRIGHT © 2007 Thomson/West

The Synopsis, Headnotes and Key Number Classification constitute no part of the opinion of the court.

[Stamp: FILED U.S. COURT OF APPEALS ELEVENTH CIRCUIT JUL 16 2007 THOMAS K. KAHN CLERK]

2843                GRAYSON v. ALLEN

**7. Civil Rights ⇐1382**

Finding that death row inmate unreasonably delayed filing his § 1983 challenge to Alabama's three-drug lethal injection protocol was supported by evidence that action was filed 24 years after inmate's capital murder conviction, nearly five years after Supreme Court's denial of certiorari from affirmance of denial of inmate's habeas petition, four years after Alabama adopted lethal injection protocol, and four years after inmate filed unsuccessful § 1983 action seeking access to biological evidence, that, though circuit precedent called for method-of-execution challenges to be brought in second or successive habeas petitions instead of § 1983 actions, inmate could have filed § 1983 suit to challenge this precedent, that inmate did not file his § 1983 challenge until five months after Supreme Court recognized in *Hill v. McDonough* that inmates could file § 1983 method-of-execution challenges, and that confidentiality of state's protocol did not impede inmate from filing claim earlier. 42 U.S.C.A. § 1983.

**Civil Rights ⇐1382**

District court did not abuse its discretion in dismissing death row inmate's § 1983 action challenging Alabama's three-drug lethal injection protocol due to inmate's unreasonable delay in bringing the action; inmate delayed filing his method-of-execution challenge until his execution was imminent, inmate had filed earlier unsuccessful § 1983 claim seeking access to biological evidence used at trial which also had delayed his then-imminent execution, state had adopted lethal injection as its primary method of execution some four years before inmate's challenge, and inmate's expert's opinions on the three-drug cocktail, upon which inmate based his claim, had been known to inmate's counsel for approximately four year prior to the suit, such that there was little doubt that real purpose behind inmate's dilatory filing of the suit was to seek a delay of his execution, not merely to effect an alteration of the manner in which it was carried out. 42 U.S.C.A. § 1983.

---

Appeal from the United States District Court for the Middle District of Alabama.

Before ANDERSON, BIRCH and HULL, Circuit Judges.

HULL, Circuit Judge:

Plaintiff Darrell Grayson, an Alabama death row inmate scheduled for execution on July 26, 2007, appeals the district court's order dismissing his 42 U.S.C. § 1983 action challenging Alabama's lethal injection protocol and its administration. After review, we conclude that the district court did not abuse its discretion in finding that Grayson unreasonably delayed the filing of this § 1983 action and thus affirm the dismissal.

## I. BACKGROUND

### A. 4 December 1980–30 June 2002

The details of Grayson's crimes are set forth in our 2001 opinion affirming the district court's denial of Grayson's 28 U.S.C. § 2254 habeas petition. *See Grayson v. Thompson*, 257 F.3d 1194, 1197–98 (11th Cir. 2001). Briefly, on December 24, 1980 (Christmas Eve), Grayson and a co-defendant raped, beat, and brutally murdered eighty-six year old Mrs. Annie Laura Orr during their burglary of her home. *See id.* Grayson's co-defendant, Victor Kennedy, was executed on August 6, 1999.

GRAYSON v. ALLEN                                    2844

In June 1982, a jury convicted Grayson of capital murder during a burglary of an inhabited dwelling, pursuant to Ala.Code § 13A-5-31(A)(4) (1975) (repealed).[1] *See Grayson v. State*, 479 So.2d 69, 71 (Ala.Crim. App.1984). At sentencing, the jury recommended a death sentence, and the trial court sentenced Grayson to death. *See id.* The Alabama appeals courts upheld Grayson's conviction and death sentence on direct appeal. *See id.* at 76; *Ex parte Grayson*, 479 So.2d 76, 82 (Ala.), *cert. denied*, 474 U.S. 865, 106 S.Ct. 189, 88 L.Ed.2d 157 (1985).

In 1986, Grayson sought post-conviction habeas relief in Alabama's state courts based, *inter alia*, on his counsel's alleged failure to present evidence of Grayson's alcoholism and abusive, impoverished upbringing. *See Grayson v. Thompson*, 257 F.3d at 1208-09. After an evidentiary hearing was held in April 1992, the state habeas court denied Grayson's petition for post-conviction relief. *See id.* at 1214. In December 1995, the Alabama Court of Criminal Appeals affirmed the denial of Grayson's state habeas petition. *Grayson v. State*, 675 So.2d 516, 531 (Ala. Crim.App.1995), *cert. denied*, 519 U.S. 934, 117 S.Ct. 309, 136 L.Ed.2d 225 (1996).

In April 1996, Grayson filed a § 2254 petition in federal district court, contending, *inter alia*, that he was denied effective assistance of counsel, that the admission of allegedly involuntary statements to law enforcement violated his Fifth Amendment rights, and that his due process rights were violated. *Grayson v. Thompson*, 257 F.3d at 1215 & n. 8. The district court denied Grayson's § 2254 petition but granted his motion for a Certificate of Appealability on five issues. *Id.* at 1214-15. In July 2001, this Court affirmed the denial of Grayson's § 2254 petition. *Id.* at 1232. The Supreme Court denied Grayson's petition for certiorari in June 2002. *Grayson v. Thompson*, 536 U.S. 964, 122 S.Ct. 2674, 153 L.Ed.2d 846 (2002).

B.  *Grayson's first § 1983 action: 15 November 2002-18 August 2006*

On July 1, 2002, the State of Alabama changed its primary method of execution from electrocution to lethal injection and gave death row inmates thirty days from the Alabama Supreme Court's affirmance of their death sentences to elect electrocution instead. *See* Ala.Code § 15-18-82.1. Grayson did not elect electrocution and thus challenges only his execution by lethal injection.

On August 12, 2002, the State first requested an execution date from the Alabama Supreme Court. On September 23, 2002, Grayson filed a motion in the state trial court to obtain the biological evidence presented at trial so that he could conduct DNA testing on the evidence. *See Grayson v. King*, 460 F.3d 1328, 1335 (11th Cir.2006), *cert. denied*, — U.S. —, 127 S.Ct. 1005, 166 L.Ed.2d 712 (2007). On October 10, 2002, the state trial court denied Grayson's motion for lack of jurisdiction. *See id.*

On November 15, 2002, three months after the State first requested an execution date, Grayson filed a 42 U.S.C. § 1983 claim in federal district court seeking access to the biological evidence used at trial. *Id.* Grayson waited until March 27, 2003 to respond to the State's request for an execution date, asking the Alabama Supreme Court to withhold action until the resolution of his § 1983 suit. On May 22, 2003, the Alabama Supreme Court, over three dissents, declined to set an execution date pending a ruling on the § 1983 action about biological evidence.

---

1. Capital offenses are now set forth in Alabama Code § 13A-5-40.

## GRAYSON v. ALLEN

In September 2005, the district court dismissed Grayson's § 1983 action for failure to state a claim, and we affirmed the district court's order in August 2006. *Id.* at 1336, 1343. This Court noted that "Grayson thrice confessed to the crime, testified at trial admitting his role in the crime, and still does not affirmatively assert that he is actually innocent, but only that he does not remember the details of the night of the crime." *Id.* at 1341–42. The Supreme Court denied Grayson's petition for certiorari as to his first § 1983 action in January 2007. *Grayson v. King,* — U.S. —, 127 S.Ct. 1005, 166 L.Ed.2d 712 (2007).

### C. Grayson's second § 1983 action: 17 November 2006

On November 17, 2006, twenty-four years *after* his conviction for capital murder, four years *after* Alabama adopted lethal injection for death row inmates, and four years *after* filing his first § 1983 action about biological evidence, Grayson filed this second § 1983 action, this time challenging the State's lethal injection method and procedure.

In his second § 1983 action, Grayson contends that Alabama's lethal injection protocol violates the Eighth and Fourteenth Amendments and seeks to enjoin the State from executing him with its current protocol. In January 2007, the State again petitioned the Alabama Supreme Court to set an execution date for Grayson. On April 23, 2007, the Alabama Supreme Court set an execution date of July 26, 2007, and Grayson filed a motion to stay his execution on April 30, 2007.

On May 17, 2007, the district court granted the State's motion to dismiss Grayson's § 1983 lethal injection claim and denied Grayson's motion to stay his execution. On May 23, 2007, Grayson appealed the district court's order dismissing his § 1983 action. Because Grayson's execution is scheduled for July 26, 2007, this Court expedited the briefing schedule, with Grayson's brief due on June 4, 2007, the State's brief due on June 18, 2007, and Grayson's reply brief due on June 25, 2007.

## II. DISCUSSION

[1-3] Grayson's now second § 1983 action challenges Alabama's three-drug lethal injection protocol and seeks injunctive relief. The district court dismissed Grayson's § 1983 lawsuit based on its finding that Grayson delayed unnecessarily in bringing his lethal injection claim and that this inexcusable delay caused undue prejudice to the State.[2] Accordingly, the district court determined that Grayson was not entitled to injunctive relief and dismissed Grayson's claim under the doctrine of laches.

[4] Injunctive relief is an equitable remedy that is not available as a matter of right. In the § 1983 suit by a death row inmate in *Hill v. McDonough,* — U.S. —, 126 S.Ct. 2096, 165 L.Ed.2d 44 (2006), the Supreme Court noted that a number of federal courts "have invoked their equitable powers to dis-

---

2. We review the district court's denial of equitable relief for abuse of discretion. *See SEC v. Ginsburg,* 362 F.3d 1292, 1297 (11th Cir.2004). We review any factual findings made by the district court in support of its denial of an injunction for clear error and underlying questions of law de novo. *See Preferred Sites, LLC v. Troup County,* 296 F.3d 1210, 1220 (11th Cir.2002). Therefore, in this case, we review the district court's dismissal of a § 1983 method-of-execution challenge because of inexcusable delay for abuse of discretion. *See Rutherford v. Crosby,* 438 F.3d 1087, 1089–90 (11th Cir.) (per curiam), *rev'd on other grounds, Rutherford v. McDonough,* — U.S. —, 126 S.Ct. 2915, 165 L.Ed.2d 914 (2006).

miss [§ 1983] suits they saw as speculative or filed too late in the day." *Id.* at 2104 (citing *Hicks v. Taft*, 431 F.3d 916 (6th Cir.2005); *White v. Johnson*, 429 F.3d 572 (5th Cir. 2005); *Boyd v. Beck*, 404 F.Supp.2d 879 (E.D.N.C.2005)); *see also Rutherford v. Crosby* (*Rutherford I*), 438 F.3d 1087, 1091–92 (11th Cir.) (per curiam) (collecting cases), *rev'd on other grounds, Rutherford v. McDonough*, — U.S. —, 126 S.Ct. 2915, 165 L.Ed.2d 914 (2006). While the Supreme Court did not pass judgment on these § 1983 cases, it recognized the "significant" problem created by such delay and stated that "federal courts can and should protect States from dilatory or speculative suits...." *Hill*, 126 S.Ct. at 2104.

[5, 6] Additionally, the equitable principles at issue when inmates facing imminent execution delay in raising their § 1983 method-of-execution challenges are equally applicable to requests for both stays and injunctive relief. *See Rutherford v. McDonough* (*Rutherford II*), 466 F.3d 970, 976 (11th Cir.) (affirming *dismissal* of § 1983 suit challenging lethal injection based on petitioner's unnecessary delay in filing suit), *cert. denied*, — U.S. —, 127 S.Ct. 465, 166 L.Ed.2d 331 (2006); *Rutherford I*, 438 F.3d at 1092 ("[W]here petitioner's scheduled execution is imminent, there is no practical difference between denying a stay on equitable grounds and denying injunctive relief on equitable grounds in a § 1983 lawsuit."). Accordingly, courts considering dismissal of a dilatory § 1983 suit seeking injunctive relief should recognize the "'strong equitable presumption against the grant of a stay where a claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay.'" *Rutherford II*, 466 F.3d at 974 (quoting *Hill*, 126 S.Ct. at 2104 (quotation marks and citation omitted)); *see also Nelson v. Campbell*, 541 U.S. 637, 649–50, 124 S.Ct. 2117, 2126, 158 L.Ed.2d 924 (2004) (requiring district courts to consider whether an inmate unnecessarily delayed in bringing the claim before granting a stay "[g]iven the State's significant interest in enforcing its criminal judgments"); *Gomez v. U.S. Dist. Ct. for N. Dist. of Cal.*, 503 U.S. 653, 654, 112 S.Ct. 1652, 1653, 118 L.Ed.2d 293 (1992) (per curiam) (noting that "last-minute attempts to manipulate the judicial process" may be a ground for denying a stay).

[7] On appeal, Grayson contends that the district court clearly erred in its fact-finding that he unreasonably delayed in filing his § 1983 challenge to Alabama's lethal injection protocol. We disagree for several reasons.

First, Grayson argues that the district court wrongly faulted him for failing to file a second or successive habeas petition or his § 1983 action prior to the Supreme Court's decision in *Hill* because such § 1983 claims were unavailable to him under circuit precedent overruled in *Hill*. However, this argument ignores that nothing precluded Grayson from filing a § 1983 action before the Supreme Court's decision in *Hill*. Although our circuit precedent prior to *Hill* called for litigants raising method-of-execution challenges to bring them in second or successive habeas petitions instead of § 1983 actions, *see Rutherford I*, 438 F.3d at 1089, a death row inmate could have filed a § 1983 suit to challenge this precedent, as the death row plaintiff in *Hill* did in December 2005 in this same circuit, *see Hill*, 126 S.Ct. at 2100. Although the death row inmate in *Hill* did not have the benefit of a favorable Supreme Court decision when he filed his § 1983 action in this circuit, the plaintiff inmate sought

to vindicate his rights nearly a year before Grayson raised a similar § 1983 challenge. *See Rutherford I*, 438 F.3d at 1092 ("Hill did not have the benefit of the certiorari grant in *Hill* when Hill filed his lawsuit. Yet Hill filed the lawsuit without any grant of certiorari on the issue."). Other circuits likewise have concluded that unfavorable circuit precedent does not foreclose all avenues for relief or excuse delay in raising § 1983 lethal injection claims. *See Cooey v. Strickland*, 479 F.3d 412, 422 (6th Cir.2007); *Harris v. Johnson*, 376 F.3d 414, 418–19 (5th Cir.2004). Accordingly, the district court in Grayson's case properly found that "Hill seized the opportunity [to file a § 1983 challenge] first, but the opportunity was open to all, including Grayson."

Moreover, Grayson did not file his § 1983 challenge to Alabama's lethal injection protocol until eleven months after death row petitioner Hill in this circuit filed his similar § 1983 action and nearly ten months after the Supreme Court granted certiorari in *Hill*. *See Hill*, 126 S.Ct. at 2100–01. Even after the Supreme Court recognized in *Hill* that inmates could file § 1983 method-of-execution challenges, Grayson delayed another five months after *Hill* before filing his § 1983 action.

Second, contrary to Grayson's arguments, the confidentiality of Alabama's lethal injection protocol did not impede Grayson from filing this claim earlier. As this Court noted in dismissing a similar argument in *Jones v. Allen*, 485 F.3d 635 (11th Cir.), *cert. denied*, — U.S. —, 127 S.Ct. 2160, 167 L.Ed.2d 887 (2007):

[t]he crux of [such] challenge[s] to the lethal injection protocol—despite other general allegations about the training of the prison staff, etc.—is that the first of the three drugs (sodium thiopental) ... will not induce a sufficiently deep plane of anesthesia [before] ... the third, excruciatingly painful and death-inducing drug (potassium chloride) is administered. Regardless of the confidentiality of the State's protocol, [plaintiff Aaron Lee] Jones cannot assert that he was unaware of the fact that [Alabama] (like almost every other state that carries out executions using lethal injection) employs this three-drug cocktail. Any such assertion is belied by his complaint, which alleges "upon information and belief" that the State uses "Thiopental, Pavulon, and Potassium Chloride ... to achieve first anesthesia, then paralysis, and finally ... cardiac arrest." Thus, Jones knew of the basis of his claim before he filed his complaint.

*Id.* at 640 n. 3. Grayson's second § 1983 complaint is nearly identical to Aaron Lee Jones's first § 1983 complaint in his challenge to Alabama's lethal injection protocol.[3] Just as in *Jones*, Grayson's assertion that he was unaware of Alabama's three-drug protocol is belied by the specific allegations in his own complaint.

Grayson claims that he had no knowledge about the execution team's training and the procedure for preparing the drugs and syringes, administering the drugs, and monitoring the execution. However, Grayson makes no claim that he had any such knowledge when he filed his second § 1983 complaint in November 2006. If Grayson was ignorant about these facts yet was able to file a second § 1983 complaint in November 2006 alleging improper training and procedures, there is

---

3. Specifically, Grayson asserted "upon information and belief that Alabama uses drugs to achieve first anesthesia, then paralysis, and finally execution by cardiac arrest. The chemicals used include Thiopental, Pavulon, and potassium chloride."

no reason why Grayson could not have filed a similar § 1983 complaint based "upon information and belief" months, if not years, earlier. In fact, there is no reason why Grayson could not have added a lethal injection claim when he filed his *first* § 1983 suit on November 15, 2002, which was nearly six months after Alabama had adopted lethal injection and three months after Alabama had first requested an execution date.

Furthermore, as the district court noted, Grayson's "technical knowledge of lethal injection matters is based upon the expert opinion of Dr. Mark Heath." This circuit noted recently in *Jones* that death row inmate Jones should have known about substantially similar lethal injection challenges because "the expert upon whom Jones relies ... has been opining on the alleged risks associated with this particular three-drug cocktail since at least 2003." *Jones*, 485 F.3d at 640 n. 3. Similarly, Dr. Heath has been opining upon the alleged risks of lethal injection in numerous challenges across the country since at least 2002. Grayson thus should have been aware of the basis of his claim well before November 2006. *See id.*

Additionally, Grayson's counsel Stephen Bright, who has ably represented Grayson through more than fifteen years of state and federal post-conviction proceedings, *see Grayson v. King*, 460 F.3d at 1335, also served as counsel in 2002 in a § 1983 suit challenging Georgia's lethal injection protocol, *see Fugate v. Dep't of Corr.*, 301 F.3d 1287, 1288 (11th Cir.2002). Attached to the initial complaint in *Fugate* was a declaration from Dr. Heath questioning this same three-drug cocktail. *See Fugate v. Dep't of Corr.*, No. 1:02–CV–2219–CC, Docket Entry No. 1 (N.D.Ga. Aug. 12, 2002). Because Grayson's counsel was apparently aware of Dr. Heath's opinion on the alleged risks associated with this three-drug cocktail and had filed a similar § 1983 complaint relying on Dr. Heath's opinion in 2002, Grayson has shown no justification in the instant record for his waiting more than four years after *Fugate* to file a nearly identical § 1983 action.

Finally, Grayson's claim that the factual and legal landscape surrounding lethal injection has changed recently is meritless. The district court correctly noted that Alabama's lethal injection protocol had been in place for over four years when Grayson filed his second § 1983 complaint in 2006 and had been used in twelve executions and that no change in the protocol prompted the timing of Grayson's suit. Indeed, Grayson makes no claim that Alabama's lethal injection protocol has been modified since its inception in 2002. *Cf. Rutherford I*, 438 F.3d at 1092 ("There has been no suggestion that the lethal injection chemicals or procedures used by Florida have changed in the last six years, and Rutherford's complaint assumes that they have not."). Grayson's allegation about profound changes in the legal landscape is equally unavailing in light of the plethora of lethal injection challenges that have been raised in multiple states even years before Alabama adopted lethal injection as its primary method of execution. *See Sims v. State*, 754 So.2d 657, 668 n. 20 (Fla.2000) (citing cases addressing constitutional challenges to lethal injection). Grayson argues that he only had notice of a potentially meritorious challenge to Alabama's lethal injection protocol after a district court first raised questions about the constitutionality of a similar lethal injection protocol in *Morales v. Hickman*, 415 F.Supp.2d 1037, 1046 (N.D.Cal.2006). Yet Grayson tellingly provides no explanation for why he delayed another nine months after *Morales* was decided in February 2006 to file his own § 1983 action in November 2006.

Case 2:06-cv-01032-WKW-CSC   Document 90   Filed 08/15/2007   Page 5 of 5

For all the foregoing reasons, the district court did not clearly err in finding that Grayson's delay in raising his § 1983 challenge to Alabama's lethal injection protocol was unnecessary and inexcusable. Grayson filed his present second § 1983 action (1) twenty-four years after a jury convicted him of the brutal murder of Mrs. Orr during a burglary and recommended a death sentence, see *Grayson v. Thompson*, 257 F.3d at 1207; (2) five years after this Court affirmed the denial of Grayson's § 2254 petition in 2001, see *id.* at 1232; and (3) nearly five years after the Supreme Court's subsequent denial of his petition for certiorari "eliminate[d] the last possible obstacle to execution," *Jones*, 485 F.3d at 639 n. 2 (concluding that because Alabama typically seeks an execution date shortly after the Supreme Court denies certiorari review of an inmate's § 2254 petition, the inmate "should have foreseen that the execution date would likely be set promptly upon completion of collateral review"). Indeed, upon conclusion of Grayson's § 2254 proceedings, the State of Alabama promptly sought an execution date for Grayson in 2002, but Grayson's filing of his first § 1983 action thwarted the State's attempt to execute him in 2002. Even more indicative of delay, Grayson did not file this second § 1983 challenge in 2006 until four years after he filed his first post-conviction § 1983 action in 2002. See *Grayson v. King*, 460 F.3d at 1335.

[8] Furthermore, given that Grayson has unreasonably delayed in filing this second § 1983 action, we conclude that this Court's decision in *Rutherford II* affirming a dismissal of a death row inmate's § 1983 suit for unnecessary delay guides our decision to affirm the district court's dismissal of Grayson's § 1983 action in this case. In *Rutherford II*, a death row inmate (Arthur Rutherford) delayed filing his method-of-execution challenge until his execution was imminent, even though Florida had enacted its lethal injection option six years prior to the suit and the *Lancet* research letter upon which he based his action was published nine months before he filed his suit. *Rutherford II*, 466 F.3d at 975, cert. denied, ___ U.S. ___, 127 S.Ct. 465, 166 L.Ed.2d 331. Accordingly, this Court affirmed the district court's alternative finding that Rutherford delayed unnecessarily in bringing the § 1983 action and did not leave sufficient time for full adjudication on the merits. *Id.* at 974. This Court thus concluded that the district court did not err in *dismissing* Rutherford's § 1983 challenge to Florida's lethal injection protocol. *Id.* at 978.

This reasoning applies with equal force to Grayson. Here, Grayson delayed filing his method-of-execution § 1983 suit until his execution was once again imminent. We say once again because, as noted earlier, this is not the first time that Grayson's execution was imminent. The first time Grayson's execution was imminent was in 2002, when his § 2254 post-conviction proceedings were completed. See *Jones*, 485 F.3d at 639 n. 2 ("It is common practice in Alabama for the State to seek an execution date soon after the Supreme Court denies *certiorari* review of an inmate's federal habeas petition."). Although the State attempted to set an execution date in 2002, Grayson's first § 1983 action delayed that imminent execution until the conclusion of that suit in 2006. Specifically, in August 2006, this Court affirmed the dismissal of his first § 1983 action. Therefore, in August 2006, Grayson's execution once again became imminent. See *id.* (concluding that even though the death row inmate's execution had not been set when he filed his § 1983 action, "given the extremely small chance of securing *certiorari* review in the Supreme Court, it was all but guaranteed that Jones would die by lethal injection" as

GRAYSON v. ALLEN 2850

soon as this circuit denied post-conviction relief).

Furthermore, as in *Rutherford II*, Alabama had adopted lethal injection as its primary method of execution many years before Grayson filed his second § 1983 complaint. Just as the *Lancet* research letter upon which Rutherford based his claim was published nine months before he filed his § 1983 suit, Dr. Heath's opinions on the three-drug cocktail used by Alabama, upon which Grayson based his claim, have been known to Grayson's counsel since at least 2002. Based on *Rutherford II*, Grayson's unnecessary delay was a proper ground to dismiss his present § 1983 action. See *Rutherford II*, 466 F.3d at 978, cert. denied, —— U.S. ——, 127 S.Ct. 465, 166 L.Ed.2d 331.

As emphasized earlier, Grayson did not file this second § 1983 action until he again faced the clear possibility that the Alabama Supreme Court would imminently set his execution date. See *Jones*, 485 F.3d at 639-40. If Grayson truly had intended to challenge Alabama's lethal injection protocol, he would not have deliberately waited to file suit until a decision on the merits would be impossible without entry of a stay or an expedited litigation schedule.[4] See *Rutherford II*, 466 F.3d at 974. We thus conclude that the district court properly found that Grayson offered no justification for why he could not have brought this § 1983 action earlier, and that Grayson's dilatory filing of this suit "'leaves little doubt that the real purpose behind his claim is to seek a delay of his execution, not merely to effect an alteration of the manner in which it is carried out.'" *Jones*, 485 F.3d at 640 (citation omitted).

The Supreme Court has recognized that "'[b]oth the State and the victims of crime have an important interest in the timely enforcement of a sentence,'" and that federal courts considering equitable relief "must be 'sensitive to the State's strong interest in enforcing its criminal judgments without undue interference from the federal courts.'" *Rutherford II*, 466 F.3d at 974 (quoting *Hill*, 126 S.Ct. at 2104). Both the State and Mrs. Orr's family have strong interests in seeing Grayson's punishment carried out after waiting twenty-five years since Grayson received a death sentence. After a quarter century of delay, Grayson is not entitled to another reprieve. See *Thompson v. Wainwright*, 714 F.2d 1495, 1506 (11th Cir.1983) ("Each delay, for its span, is a commutation of a death sentence to one of imprisonment."). Given the strong presumption against the grant of dilatory equitable relief, we conclude that the district court did not abuse its discretion in dismissing Grayson's § 1983 action due to his unnecessary delay.[5]

AFFIRMED.

---

4. Given that Grayson's execution became imminent again in August 2006, we also reject Grayson's argument that the district court clearly erred in finding that the late filing of his § 1983 suit necessitated a stay or a burdensome litigation schedule. Grayson's first § 1983 action, filed in 2002, took over four years to proceed from the district court through the Supreme Court's denial of certiorari review. Even leaving aside the potential months or even years added to this second § 1983 litigation from appeals, Grayson has not established that the district court clearly erred in its factual finding that a trial on the merits would have taken much more than three months. Accordingly, we conclude that the district court did not clearly err in finding that Grayson's second § 1983 suit was not filed in sufficient time to allow full adjudication on the merits without entry of a stay. See *Jones*, 485 F.3d at 639 n. 2.

5. Because we affirm the district court's dismissal of Grayson's § 1983 complaint on equitable grounds, we need not address the State's alternative arguments that Grayson's suit is barred by the statute of limitations and res judicata.

A True Copy - Attested:
Clerk, U.S. Court of Appeals,
Eleventh Circuit

*[signature]*
Deputy Clerk

RECEIVED 2007 AUG 15 P 2:20